**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 30 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

NICK PREMRATANANONT,

      Plaintiff-Appellant,

v.

SOUTH SUBURBAN PARK AND
RECREATION DISTRICT, a special
district,

      Defendant-Appellee.

No. 97-1090
(D.C. No. 96-WY-446-WD)
(Colorado)

**ORDER AND JUDGMENT**

Before **SEYMOUR**, Chief Judge, **ANDERSON** and **LUCERO**, Circuit Judges.

Nick Premratananont, who is Asian, brought suit against South Suburban

Park and Recreation District (South Surburban) alleging constructive discharge

based on his race/national origin in violation of Title VII and state law. The

district court granted South Suburban's motion for summary judgment. Mr.

Premratananont appeals, and we affirm.

Plaintiff was hired by South Suburban to do custodial work and minor

repairs in July 1981. He was promoted twice on the recommendation of his then-

supervisor Bob Pfeiffer, ultimately obtaining the position of Lead Facility Maintenance Specialist at the Goodson Recreation Center.

In May 1994, Mr. Pfeiffer resigned and Kim Lathrop became plaintiff's new supervisor. In September, South Suburban posted a job opening for Supervisor of Preventative Maintenance. Although plaintiff met the minimum qualifications listed for the position and submitted an application along with fifty-one other persons, he was not granted an interview. Kevin Greene, manager of South Suburban's recreational facilities, was responsible for selecting the interviewees. Mr. Greene stated in his deposition that he did not choose plaintiff because plaintiff had no experience managing multiple sites and because Ms. Lathrop had informed him she was having problems with plaintiff's work performance.

On September 29, 1994, plaintiff requested that Ms. Lathrop ask Mr. Greene why he had not been chosen for an interview. Later in the day, Ms. Lathrop gave plaintiff a memorandum, dated September 29, 1994, stating that she and plaintiff had discussed his poor work performance "numerous times" in the past, and "if improvement [was] not seen in 90 days this could lead to suspension and termination." Aplt. App. at 336. Ms. Lathrop indicated to plaintiff that concerns with his work may have been one of the reasons why plaintiff was not selected for an interview. Upset by Ms. Lathrop's memorandum, plaintiff

requested and was granted sick leave. While on leave, plaintiff received treatment for depression and anxiety and found employment elsewhere. Plaintiff resigned from his position at South Suburban on December 6, 1994.

In accordance with South Suburban's internal grievance procedure, plaintiff wrote a letter of grievance to Mr. Greene requesting written justification for his exclusion from the interview process. Mr. Greene responded that plaintiff was not interviewed because he did not have the same knowledge and experience as the other top candidates. Plaintiff appealed Mr. Greene's decision to the personnel office, but resigned before the appeal process could be completed.

We review the grant or denial of summary judgment de novo. Summary judgment is appropriate if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 797 (10th Cir. 1997). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When applying this standard, we view the evidence in the light most favorable to the nonmoving party. Seymore, 111 F.3d at 797.

Because plaintiff relies on circumstantial evidence to demonstrate South

Suburban's discriminatory intent, we must apply the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). The first step of the McDonnell Douglas analysis places the burden on plaintiff to establish a prima facie case of discrimination. See Reynolds v. School Dist. No. 1, 69 F.3d 1523, 1533 (10th Cir. 1995). In the context of a constructive discharge claim based on racial discrimination, plaintiff must show: (1) he is a minority; (2) he was performing satisfactory work or was qualified to do the job; (3) defendant subjected him to working conditions that a reasonable person would view as intolerable because of his race; and (4) his position was filled by a non-minority. Id. at 1334; Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 529 (10th Cir. 1994). The district court held plaintiff failed to establish the third element of constructive discharge, and therefore failed to present a prima facie case of discrimination under Title VII. The court dismisssed the state law claims without prejudice, declining to exercise supplemental jurisdiction.

Constructive discharge occurs when a reasonable person in the employee's position has essentially "no other choice but to quit." Yearous v. Niobrara County Mem'l Hosp., 128 F.3d 1351, 1356 (10th Cir. 1997) (internal quotation marks and citation omitted). The typical constructive discharge claim alleges that an employer created a hostile work environment which rendered working conditions intolerable. Constructive discharge claims may also be based on other

-4-

types of intolerable working conditions such as retaliatory conduct for making a complaint of discrimination, see Woodward v. City of Worland, 977 F.2d 1392, 1402 (10th Cir. 1992), or a failure to promote for discriminatory reasons, see Irving v. Dubuque Packing Co., 689 F.2d 170, 171-72 (10th Cir. 1982). However, "[a] finding of constructive discharge must not be based only on the discriminatory act; there must also be aggravating factors that make staying on the job intolerable." James v. Sears Roebuck, 21 F.3d 989, 992 (10th Cir. 1994); see also Irving, 689 F.2d at 172-73. Examples of "aggravating factors" might include a perceived demotion or reassignment to a job with lower status or lower pay, depending on the individual circumstances of each case. James, 21 F.3d at 993. Courts must therefore examine the "totality of the circumstances." Yearous, 128 F.3d at 1356.

Plaintiff bases his constructive discharge claim on discriminatory treatment, failure to promote, and retributive conduct. The record reveals no indication that Ms. Lathrop treated plaintiff differently, or that Mr. Greene denied him an interview, because of his race; nor does it reveal any aggravating factors which created conditions that were so intolerable a reasonable person would feel compelled to resign. The extent of plaintiff's allegations of differential treatment by Ms. Lathrop include walking around the Goodson Recreation Center with plaintiff pointing out tasks that needed to be completed and requiring plaintiff to

clear vacation days and doctors' visits with her, while not demanding the same of Mr. Blevins, a supervisor of another recreation center; excluding plaintiff from a walk around the Goodson facility with Mr. Blevins and another supervisor; and telling plaintiff she trusted Mr. Blevins more than him. Aplt. App. at 45-46, 61-62. Ms. Lathrop never yelled at plaintiff, called him any names, or insulted him. Aplt. App. 68-70.

We find plaintiff's allegations of discriminatory conduct by Mr. Greene equally unavailing. Fifty-two persons applied for the position. Many of the applicants, like plaintiff, met the minimum qualifications but were not granted interviews. Mr. Greene established objective criteria to narrow the field of potential interviewees. One such criterion was the management of multiple sites, experience which plaintiff admitted he did not possess. Don Pettit, who was ultimately hired for the position, often filled in during vacations and sick leaves for the outgoing Supervisor of Preventative Maintenance. Moreover, South Suburban had promoted plaintiff twice in the past, and plaintiff never received any pay cut or lower status assignments as a result of being denied for the promotion. Plaintiff has failed to show that Ms. Lathrop's and Mr. Greene's conduct was motivated by racial animus; he therefore cannot claim he was "forced to quit because of race-based, intolerable conditions." Bolden v. PRC, Inc., 43 F.3d 545, 552 (10th Cir. 1994).

Plaintiff further contends he was constructively discharged as a result of Ms. Lathrop's retaliatory conduct in response to his complaints as to why he was not granted an interview. Plaintiff specifically alleges Ms. Lathrop made up lies about his work performance and about raising such concerns with him on numerous occasions, and threatened him with termination if his performance did not improve.[1] One factor we consider in determining the voluntariness of a plaintiff's decision to resign is "whether the employee was given some alternative to resignation." Yearous, 128 F.3d at 1356 (internal quotation marks and citation omitted). Here, plaintiff did not utilize South Suburban's internal grievance procedure to contest Ms. Lathrop's allegedly fabricated and undeserved negative performance evaluations of him or the ninety-day warning of termination. Plaintiff only filed a grievance regarding his failure to obtain an interview, and resigned before the appeal of this issue was completed. Our review of the record persuades us that the conditions were not so serious that a reasonable employee in plaintiff's position would have resigned before pursuing South Suburban's internal grievance procedures. See id. at 1357 (nurses who chose to forego filing

---

[1]The issue of whether Ms. Lathrop fabricated such allegations is highly disputed by the parties. This factual dispute, however, does not "affect the outcome of the suit," and therefore does not "properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) Even assuming September 29 was the first time Ms. Lathrop mentioned plaintiff's poor work performance to him, as we discuss infra, we still conclude plaintiff was not constructively discharged.

an internal grievance with hospital's personnel committee could not prove their resignation was involuntary where conditions were not sufficiently serious and reasonable alternative to resignation existed); Boze v. Branstetter, 912 F.2d 801, 805 (5th Cir. 1990) (per curiam) (more appropriate response to being passed over for promotion or receiving a negative performance evaluation would have been to pursue internal grievance procedures rather than quit).

In sum, the record contains no evidence that plaintiff was treated differently or denied the promotion because of his race. Nor is there any evidence of aggravating factors which made conditions intolerable. Finally, plaintiff had a reasonable alternative to resignation. Plaintiff has failed to meet his burden of establishing a prima facie case of discrimination.

We **AFFIRM** the order of the district court.

SUBMITTED FOR THE COURT

Stephanie K. Seymour
Chief Judge