F I L E D
United States Court of Appeals
Tenth Circuit

AUG 3 2001

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT
_____

LINDA J. BENNETT,

       Plaintiff-Appellant,

v.

QUARK, INC.,

       Defendant-Appellee.

No. 00-1177

_____

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 98-N-2089)**
_____

Submitted on the briefs:

Nancy L. Pearl of Pearl and Associates, LLC, Denver, Colorado, and Anne
Whalen Gill of Anne Whalen Gill, P.C., Greenwood Village, Colorado, for
Plaintiff-Appellant.

Lynn D. Feiger and Joan M. Bechtold of Feiger, Collison & Bechtold, LLC,
Denver, Colorado, for Defendant-Appellee.
_____

Before **HENRY** and **MURPHY**, Circuit Judges, and **VANBEBBER**, Senior
District Judge.[*]
_____

**VANBEBBER**, Senior District Judge.

_____

   [*]The Honorable G. Thomas VanBebber, Senior District Judge, United States
District Court for the District of Kansas, sitting by designation.

Plaintiff Linda J. Bennett filed this action against defendant Quark, Inc. alleging unlawful discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34 (ADEA). She alleges that defendant failed to promote her on two separate occasions and constructively discharged her because of her age. The district court granted summary judgment in favor of defendant on all claims. Plaintiff appeals. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm the district court's decision.[1]

## I. Standard for Review

We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1313 (10th Cir. 1999) (citation omitted). Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue of fact exists if the evidence is such that a reasonable jury could resolve the issue either way. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

---

[1]After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f). The case is therefore submitted without oral argument.

An issue of fact is "material" if it is essential to the proper disposition of the claim. See id. (citing same). The court must consider the record, and all reasonable inferences therefrom, in the light most favorable to the party opposing the motion. See id.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. See id. at 670-71 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Id. at 671 (citing Celotex, 477 U.S. at 325). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party. See id.

## II. Factual Background

In January of 1993, plaintiff began working for defendant as a human resources assistant. At that time, she was forty-one years of age. Her initial duties focused on both employee benefits and training. By late 1996, however, her duties focused primarily on benefits, and defendant changed her job title to benefits specialist.

On September 1, 1996, defendant promoted an employee named Audrey Stepp to the position of payroll supervisor/human resources generalist. Plaintiff asked Ms. Stepp if she had received a promotion. Ms. Stepp responded that, while her title had changed, she had not received a promotion.

In August of 1996, defendant posted a job opening for the position of human resources trainer. Plaintiff asked her manager, Cheryl Smith, whether this position would be a promotion for her. Ms. Smith informed plaintiff that the position would not constitute a promotion, but would be a lateral move. Plaintiff did not submit an application for the position. On January 27, 1997, approximately five months after the position was first posted, defendant promoted an employee named Leslie Green to the position. Ms. Green had submitted a formal application for the position.

In June or July of 1997, plaintiff discussed what she perceived to be pay inequities with Diane Witonsky, the Director of Human Resources. Ms. Witonsky informed plaintiff that Ms. Stepp's transition to payroll supervisor/human resources generalist had been a promotion. Ms. Witonsky also informed plaintiff that the position of human resources trainer (awarded to Ms. Green) would have constituted a promotion for plaintiff.

A short time later, defendant directed plaintiff to stop reporting to manager Cheryl Smith and instead to report to Ms. Stepp, a lower-level supervisor. This

was particularly discouraging for plaintiff, because plaintiff considered Ms. Stepp to be a younger employee who was promoted above her.

Plaintiff resigned from her employment with defendant on August 11, 1997. She filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on November 10, 1997. After obtaining the right to sue, plaintiff filed a petition for relief in Colorado state court. Defendant removed the case to the United States District Court for the District of Colorado.

Plaintiff alleged that defendant failed to promote her to payroll supervisor/human resources generalist (awarded to Ms. Stepp) and/or human resources trainer (awarded to Ms. Green) on account of her age in violation of the ADEA. Plaintiff also alleged that defendant eventually made her working conditions so intolerable that she was forced to resign.

Defendant moved for summary judgment on all of plaintiff's claims. The district court granted the motion, holding that (1) plaintiff had failed to timely exhaust her administrative remedies with respect to the Stepp promotion, (2) plaintiff had failed to establish a prima facie case regarding the Green promotion, and (3) plaintiff had failed to set forth sufficient facts from which a reasonable jury could conclude that she was constructively discharged.

### III.  Discussion
### A.  Failure to Promote
### 1.  Stepp Promotion

Plaintiff contends that the district court erred in concluding that she had failed to timely exhaust her administrative remedies regarding the Stepp promotion.  The district court granted summary judgment in favor of defendant because plaintiff had failed to file a charge of discrimination with the EEOC within 300 days of the Stepp promotion. To bring a valid claim under the ADEA, a plaintiff must file a charge of discrimination with the EEOC within 300 days of the underlying discriminatory act.  See 29 U.S.C. § 626(d).[2]  Plaintiff acknowledges that she did not file a charge of discrimination within 300 days of the Stepp promotion.  She argues, however, that her charge, dated November 10, 1997, was nonetheless timely because (1) the 300-day limitations period was subject to equitable tolling until June or July of 1997 and (2) the Stepp promotion was part of a continuing violation that lasted until June or July of 1997.

---

[2]Plaintiff filed her charge of discrimination with the Colorado Civil Rights Division, an agency of the state of Colorado.  The 300-day limitations period applies to "deferral states," like Colorado, in which the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations. See Bullington, 186 F.3d at 1310 n.2 (citing 42 U.S.C. § 2000e-5).  Otherwise, the limitations period is 180 days.  See id. (citing same).

### a. Equitable Tolling

Plaintiff argues that summary judgment was inappropriate because the 300-day limitations period was subject to equitable tolling until June or July of 1997-- the time at which she first learned that Ms. Stepp's transition to the position of payroll supervisor/human resources generalist was in fact a promotion.

Under proper circumstances, "[t]he timely filing of a discriminatory charge may be equitably tolled." Purrington v. Univ. of Utah, 996 F.2d 1025, 1030 (10th Cir. 1993) (citing Irwin v. Veterans Admin., 498 U.S. 89, 94-95 (1990)). This court summarized the requirements for equitable tolling of the ADEA time limits in Hulsey v. Kmart, Inc., 43 F.3d 555 (10th Cir. 1994). There, we stated:

> It is well settled that equitable tolling of the ADEA is appropriate only where the circumstances of the case rise to the level of active deception where a plaintiff has been lulled into inaction by her past employer, state or federal agencies, or the courts. When such deception is alleged on the part of an employer, [the] limitations period will not be tolled unless an employee's failure to timely file results from either a deliberate design by the employer or actions that the employer should unmistakably have understood would cause the employee to delay filing [her] charge.

Id. at 557 (citations, internal ellipses and quotation marks omitted). The decision whether to equitably toll the limitations period rests within the sound discretion of the district court. See Purrington, 996 F.2d at 1030 (citing EEOC v. Gen. Lines, Inc., 865 F.2d 1555, 1558 (10th Cir. 1989) (citing McKinney v. Gannett

Co., 817 F.2d 659, 670 (10th Cir. 1987))).  Absent an abuse of discretion, the district court's decision will not be disturbed on appeal.  <u>See</u> <u>id.</u> (citing same).

Plaintiff has failed to allege any facts or circumstances that would warrant tolling of the 300-day limitations period in this case.  Plaintiff admits that Ms. Stepp's title changed to payroll supervisor/human resources trainer in September of 1996.  She alleges, however, that Ms. Stepp informed her that her transition to payroll supervisor/human resources trainer was simply a title change, and not a promotion.  She further alleges that she did not learn the truth about Ms. Stepp's transition–that it was in fact a promotion--until June or July of 1997.  Assuming these allegations are true, tolling of the 300-day limitations period is inappropriate.

To warrant tolling, the circumstances must rise to the level of active deception.  <u>See</u> <u>Hulsey</u>, 43 F.3d at 557.  Where deception by a plaintiff's employer is alleged, the evidence must show that the plaintiff's failure to timely file a charge resulted from either (1) a deliberate design by the employer or (2) actions that the employer should have unmistakably understood would cause the plaintiff to delay filing a charge.  <u>See</u> <u>id.</u>  Here, plaintiff does not allege that Ms. Stepp was acting on behalf of defendant at the time she provided plaintiff with inaccurate information about her position.  Neither does plaintiff allege that defendant was aware that Ms. Stepp had provided her with the inaccurate

-8-

information.  Under these circumstances, we cannot conclude that the district court abused its discretion in refusing to toll the 300-day limitations period.[3]

### b.  Continuing Violation

Plaintiff contends that summary judgment was inappropriate because the Stepp promotion was part of a continuing violation that lasted until June or July of 1997.  The continuing violation doctrine permits a plaintiff to challenge incidents that occur outside of a statutory limitations period, providing the incidents sufficiently relate to incidents that occur within the limitations period and thereby constitute part of a "continuing pattern of discrimination."  See Bullington, 186 F.3d at 1310 (quoting Martin v. Nannie & The Newborns, Inc., 3 F.3d 1410, 1415 (10th Cir. 1993)).  A plaintiff may establish a continuing violation by showing either that (1) a series of related acts was taken against her, with one or more of those acts occurring within the limitations period, or (2) the defendant maintained a company-wide policy of discrimination both before and during the limitations period.  See Purrington, 996 F.2d at 1028.

---

[3]Plaintiff argues in the alternative that the 300-day limitations period should be equitably tolled because defendant lulled her into inaction by failing to advertise the position internally to its employees.  Because plaintiff failed to raise this argument to the district court, we refuse to consider it now on appeal.  "We will not consider an appellant's new legal theory on appeal, even if it 'falls under the same general category as an argument presented at trial.'" Jantzen v. Hawkins, 188 F.3d 1247, 1257 (10th Cir. 1999) (quoting Bancamerica Commercial Corp. v. Mosher Steel of Kan., Inc., 100 F.3d 792, 798 (10th Cir.), amended on other grounds, 103 F.3d 80 (10th Cir. 1996)).

Plaintiff first argues that the continuing violation doctrine is applicable to this case because the Stepp promotion was part of a "series of related acts" including the Green promotion. We disagree.

To determine whether related acts constitute a continuing violation, the court considers: (1) the subject matter of the acts--whether the violations constitute the same type of discrimination; (2) the frequency of the acts; and (3) the permanence of the acts--whether the nature of the violations should trigger an employee's awareness of the need to assert her rights and whether the consequences of an act would continue even in the absence of a continuing intent to discriminate. See Bullington, 186 F.3d at 1310 (citing Martin, 3 F.3d at 1415). Related acts do not constitute a continuing violation unless they "rise to the level of a 'dogged pattern' of discrimination as distinguished from 'isolated and sporadic outbreaks.'" Purrington, 996 F.2d at 1028 (quoting Bruno v. W. Elec. Co., 829 F.2d 957, 961 (10th Cir. 1987)).

The district court properly concluded that the third factor--the permanence of the act--was fatal to plaintiff's claim. "[I]f an event or series of events should have alerted a reasonable person to act to assert his or her rights at the time of the violation, the victim cannot later rely on the continuing violation doctrine to overcome the statutory requirement of filing a charge . . . with respect to that event or series of events." Martin, 3 F.3d at 1415 n.6 (citing Bell v. Chesapeake

& Ohio Ry. Co., 929 F.2d 220, 223-25 (6th Cir. 1991)). Plaintiff's being passed over for the Stepp promotion is the sort of event that should have alerted plaintiff to act to assert her rights or, at the very least, put plaintiff on inquiry notice that she may have been the victim of discrimination. "[A] continuing violation claim will likely fail if the plaintiff knew, or through the exercise of reasonable diligence would have known, she was being discriminated against at the time the earlier events occurred." Bullington, 186 F.3d at 1311 (citing Martin, 3 F.3d at 1415 n.6). The circumstances of this case make it clear that, had plaintiff exercised due diligence in inquiring about Ms. Stepp's transition, she would have known that Ms. Stepp was promoted, and thus that she may have been the victim of discrimination. Because plaintiff was, at the very least, put on inquiry notice immediately following Ms. Stepp's transition to payroll supervisor/human resources trainer, "she had a duty to assert her rights at that time and she cannot rely on a continuing violation theory to avoid the statutory time bar." Id.

Plaintiff next argues that the continuing violation doctrine is applicable to this case because defendant maintained a company-wide policy of discrimination both before and during the limitations period. Plaintiff did not raise this argument as an objection or response to defendant's motion for summary judgment and, for this reason, we will not consider it now on appeal. "We will not consider an appellant's new legal theory on appeal, even if it 'falls under the

same general category as an argument presented at trial.'" Jantzen, 188 F.3d at 1257 (quoting Bancamerica Commercial Corp., 100 F.3d at 798).

## 2. Green Promotion

Plaintiff contends that the district court erred in concluding that she had failed to establish a prima facie case of discrimination with respect to the Green promotion. The district court granted summary judgment because plaintiff failed to establish that she had applied for the position to which Ms. Green was promoted.

To establish a prima facie case for failure to promote, plaintiff must show, among other things, that she applied for--or at least sought--the position at issue. See Whalen v. Unit Rig, Inc., 974 F.2d 1248, 1251-52 (10th Cir. 1992). While the "law does not require that a plaintiff formally apply for the job in question," the law does require "that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job." Id. (citing Grant v. Bethlehem Steel, 635 F.2d 1007, 1017 (2d Cir. 1980); Carmichael v. Birmingham Saw Works, 738 F.2d 1126, 1133 (11th Cir. 1984)).

In this case, the uncontroverted evidence shows that defendant used a formal hiring procedure to fill the position of human resources trainer: defendant posted a job opening for the position and, approximately five months later,

awarded the position to Ms. Green, an employee who had submitted a formal application. The uncontroverted evidence also shows that plaintiff failed to submit a formal application for the position.

Plaintiff argues that her failure to submit an application is not fatal to her claim because defendant was on specific notice that she was seeking the position. In support, she points to a conversation that she had with her manager in which she inquired about whether the human resources trainer position would constitute a promotion for her. Such evidence is insufficient to show that defendant was on specific notice that plaintiff was seeking the trainer position. While the evidence may indicate that plaintiff had some vague interest in the position, it does not indicate that plaintiff was seeking the position.[4]

Plaintiff argues in the alternative that her failure to apply for the position is excused by the "futile gesture" doctrine. The futile gesture doctrine permits a plaintiff who has failed to apply for a position to establish a prima facie case by demonstrating that "'[s]he would have applied but for accurate knowledge of an

_____

[4]Plaintiff makes several arguments regarding why she is a member of the group of people who might reasonably have been interested in the human resources position. Because defendant used formal hiring procedures to fill the human resources trainer position, we find the arguments irrelevant. It is only "where informal hiring procedures are used [that a plaintiff may establish a prima facie case by showing that she is] in the group of people who might reasonably be interested in the particular job." Whalen, 974 F.2d at 1251-52 (citing Grant, 635 F.2d at 1017; Carmichael, 738 F.2d at 1133).

-13-

employer's discrimination and that [s]he would have been discriminatorily rejected had [s]he actually applied.'" Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998) (quoting Pinchback v. Armistead Homes Corp., 907 F.2d 1447, 1451 (4th Cir. 1990)); see Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977) (permitting minority plaintiffs to establish Title VII prima facie case for failure to hire where plaintiffs demonstrated that submitting an application under defendant's existing policies would have been futile). Assuming without deciding that this court would apply the futile gesture doctrine to the circumstances of this case, we determine that plaintiff has failed to demonstrate that submitting an application would have been a futile gesture. Plaintiff's only argument in support of applying the doctrine is that she inquired of her manager about the position and was told it would not constitute a promotion for her. Such evidence simply does not demonstrate that plaintiff would have applied for the position but for her accurate knowledge of defendant's discrimination, nor that defendant would have discriminatorily rejected plaintiff had she actually applied.

Plaintiff failed to establish a prima facie case of discrimination because she failed to show that she applied for the human resources trainer position. The district court did not err in granting summary judgment.

## B. Constructive Discharge

Plaintiff contends that the district court erred in granting summary judgment on her constructive discharge claim. The district court determined that no reasonable jury could conclude from the evidence that defendant subjected plaintiff to working conditions so intolerable that she was forced to resign.

To prevail on her claim for constructive discharge, plaintiff must establish that, because of her age, defendant subjected her to working conditions so intolerable that a reasonable person would feel compelled to resign. See James v. Sears, Roebuck & Co., Inc., 21 F.3d 989, 992 (10th Cir. 1994) (citation omitted). A finding of constructive discharge may be based in part on a discriminatory act such as a failure to promote for discriminatory reasons. See Premratananont v. S. Suburban Park & Recreation Dist., No. 97-1090, 1998 WL 211543, at *2 (10th Cir. Apr. 30, 1998) (citing Irving v. Dubuque Packing Co., 689 F.2d 170, 171-72 (10th Cir. 1982)). However, a finding of constructive discharge may not be based solely on a discriminatory act; "'there must also be aggravating factors that make staying on the job intolerable.'" Id. (quoting James, 21 F.3d at 992).

In support of her constructive discharge claim, plaintiff offers evidence of the Stepp and Green promotions, plus evidence of "her demotion consisting of reporting to a supervisor rather than a manager" and a "pervasive age bias in the

work place." Opening Brief of Plaintiff at 20. Plaintiff's evidence, however, falls short of establishing a claim for constructive discharge.

Foremost, plaintiff's evidence fails to establish that plaintiff suffered any kind of demotion. While "[a] perceived demotion or reassignment to a job with lower status or lower pay may . . . constitute aggravating factors that would justify [a] finding of constructive discharge," see James, 21 F.3d at 993, a "'reassignment is not a demotion unless the employee can show that [she] receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than [her] previous assignment,'" id. (quoting Hooks v. Diamond Crystal Specialty Foods, Inc., 997 F.2d 793, 799 (10th Cir. 1993)). Plaintiff presents no evidence indicating that she received less pay, was given any less responsibility, or was required to use any lesser amount of skill as a result of having to report to a supervisor instead of a manager.

In addition, plaintiff's evidence fails to establish that a "pervasive age bias" existed in the workplace. Plaintiff presents evidence indicating that Fred Ebrahimi, Chief Executive Officer of defendant, told an employee named Megan McCulloch on various occasions that: (1) the average age at Quark, Inc. is thirty-three and that should be used as a selling point in recruiting new personnel; (2) Quark, Inc. does not want people around for a long time; and (3) young blood is good. Plaintiff also presents evidence indicating that she sat in meetings where

defendant's personnel made statements such as "the median age is [thirty-two], we need to gear our 401(k) plan towards those employees" and "[Quark Inc.'s] image is one of youth." Plaintiff presents no evidence, however, that Mr. Ebrahimi's statements had any effect on her or her working conditions. In fact, plaintiff's evidence indicates that plaintiff was not even aware of Mr. Ebrahimi's comments until discovery took place in this case. As the district court stated, "The conclusion that pervasive age bias existed at [Quark, Inc.] cannot be said to follow from the facts that [Quark, Inc.] was aware of the average age of its personnel and desired to tailor its benefits package to its workforce." Bennett v. Quark, Inc., No. 98-N-2089, at 21 (D. Colo. Mar. 30, 2000). To the extent any of the above statements were inappropriate, we conclude that they were isolated incidents, insufficient to show the existence of a *pervasive* age bias in defendant's workplace.[5]

---

[5]Plaintiff states in her opening brief that she presents evidence of a "pervasive age bias *including harassment by the [C]hief [E]xecutive [O]fficer.*" Opening Brief of Plaintiff at 20 (emphasis added). We assume that plaintiff is referring to her "inherent fear" of Mr. Ebrahimi while working for defendant. Plaintiff admits that this fear was not as a result of something "that [Mr. Ebrahimi] had specifically done to [her], though it was more of an inherent fear [she] developed not knowing why he had called [her] into his office and stated that [she] had been accused of being mean to new employees." Plaintiff's Colorado Civil Rights Division Charge, No. 320980175, Attached Affidavit, at 2 (Nov. 10, 1997). Because there is no indication that Mr. Ebrahimi treated plaintiff unfairly because of her age, we do not consider this as evidence that a pervasive age bias existed in the workplace.

Plaintiff attempts to supplement her argument with a statistical analysis performed by Berkeley Miller, Ph.D.  Plaintiff did not present this evidence in support of her claim for constructive discharge to the district court, and we refuse to consider it now on appeal.  <u>See</u> <u>Jantzen</u>, 188 F.3d at 1257 (citation omitted).

We conclude that plaintiff failed to set forth sufficient facts from which a reasonable jury could conclude she was constructively discharged.  The district court did not err in granting summary judgment.

## IV.  Conclusion

The district court did not err in granting defendant's motion for summary judgment.  We AFFIRM.