Steve CARLTON; Jacqueline Risley; Richard Sugar; Linda Verhaeghe, Plaintiffs–Appellants,

v.

LOCAL NO. 7 UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION; Ernest L. Duran, Jr., Defendants–Appellees.

No. 01–1013.

United States Court of Appeals, Tenth Circuit.

July 26, 2002.

Before LUCERO and MURPHY, Circuit Judges, and ALLEY, Senior District Judge.*

**ORDER AND JUDGMENT\*\***

MURPHY, Circuit Judge.

## I. INTRODUCTION

Plaintiffs–Appellants Steve Carlton, Jacqueline Risley, Richard Sugar, and Linda Verhaeghe brought suit against Defendants–Appellees United Food and Commercial Workers International Union, Local No. 7 ("Local No. 7") and its president, Ernest L. Duran, based on their allegedly wrongful terminations or constructive termination without just cause. Specifically, the Plaintiffs allege hybrid claims under the duty of fair representation and § 301 of the Labor Management Relations Act of 1947 (LMRA), as amended, 29 U.S.C. § 185(a), and separate claims under the Labor Management Relations and Disclosure Act (LMRDA), as amended, 29 U.S.C. §§ 401–531. The district court granted the Defendants' motion for summary judgment on all claims. Exercising jurisdiction under 28 U.S.C. § 1291, this court **affirms.**

## II. BACKGROUND

The Plaintiffs were members and employees of Defendant Local No. 7, a labor organization. Gary Hakes, the former president of Local No. 7, hired Plaintiffs Carlton and Sugar as business representatives. Hakes hired Plaintiff Verhaeghe as a business representative, and she thereafter worked as either a business representative or as an organizer. Carlton, Sugar,

---

\* Honorable Wayne E. Alley, Senior District Judge, United States District Court for the Western District of Oklahoma, sitting by designation.

\*\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and Verhaeghe were members of United Local Seven Staff Union (ULSSU), which represents nonclerical, nonmanagement employees of Local No. 7. Hakes also hired Plaintiff Risley as a receptionist. Risley was a member of the Office and Professional Employees International Union, Local No. 5 (OPEIU), which represents clerical employees of Local No. 7. ULSSU and OPEIU each served as the exclusive bargaining representative for its members to process grievances against Local No. 7.

As an employer, Local No. 7 was a party to collective bargaining agreements with ULSSU and OPEIU. Both agreements contain provisions requiring Local No. 7 to have just cause to discharge any employee.

Defendant Duran defeated incumbent president Hakes to become Local No. 7's new president in 1997. Carlton, Sugar, and Verhaeghe ran unsuccessfully on Hakes' slate of candidates for vice president positions in the election. Risley did not run for an elected position but supported Hakes in the election. In January 1998, Duran announced layoffs in several departments. As justifications for that decision, he cited the recently depleted strike fund, overstaffing, and the need to increase savings for upcoming negotiations.

On January 6, 1998, Duran and ULSSU President Dan Ryan signed an agreement to implement the layoffs. The agreement provided that any employee who elected to take an enhanced severance package waived his or her recall rights.[1] Carlton, Sugar, and Verhaeghe were subsequently laid off effective January 30, 1998. Carlton and Sugar accepted the enhanced severance package. Although Carlton later attempted to rescind his acceptance, Local No. 7 did not permit him to change his decision. Verhaeghe did not accept the

severance package and therefore retained her recall rights. She was subsequently recalled as an organizer, her former position, effective July 12, 1999.

Carlton, Sugar, and Verhaeghe filed grievances with ULSSU concerning their layoffs. They alleged in part that their layoffs were politically motivated. After a hearing, the ULSSU Grievance Committee refused to arbitrate their grievances after concluding there was no contract violation. Carlton, Sugar, and Verhaeghe then appealed this decision to the ULSSU membership, which met on March 10, 1998. Because Verhaeghe attended the meeting, her appeal was presented and denied on the merits; Carlton's and Sugar's appeals were denied because they did not attend. Carlton stated in his deposition that none of the employees who were laid off received notice of the meeting. Verhaeghe stated in a deposition that, although she attended the March meeting, she did not know that her appeal would be addressed.

Plaintiff Risley worked as an employee of Local No. 7 on a leave of absence from King Soopers. Her twelve-month leave expired on January 7, 1998. Risley was laid off by Local No. 7 on January 2, 1998. Shortly thereafter, Local No. 7 agreed to recall Risley. Local No. 7 requested an extension of Risley's leave of absence for six months, but King Soopers would agree to the extension only on a nonprecedential basis, meaning that any extension could not be relied upon by other employees to support their requests for leaves. Local No. 7 refused to agree to the nonprecedent-setting basis. After a Local No. 7 representative told her that she would still be laid off within the next six months, Risley resigned from her employment with

---

1. Recall rights entitle a laid off employee to be recalled to fill any position which later becomes open. Laid-off ULSSU members who retained their rights were recalled based on seniority.

Local No. 7 effective February 1998. Risley then returned to her job at King Soopers.

Risley filed a grievance with her union, OPEIU, asserting constructive termination. She claimed, in part, that her constructive termination was the result of her support for Hakes, Duran's opponent in the 1997 election. OPEIU did not arbitrate her grievance because it believed there was no contract violation. Risley then filed unfair labor practice charges with the National Labor Relations Board (NLRB) against OPEIU and Local No. 7 on February 20, 1998, which the NLRB denied.

On May 12, 1998, all four Plaintiffs filed internal union charges against Duran directly with Local No. 7 pursuant to the United Food and Commercial Workers International Union ("International Union") Constitution and the Local No. 7 Union Bylaws. They claimed that Duran's stated reasons for the layoffs were pretextual and "[i]n fact, the forced lay-off/terminations/resignations were implemented in an effort to rid the Local of employees who supported Gary Hakes in the previous Election of Officers and in an effort to stifle dissent of those members." Provisions in both the Local No. 7 Bylaws and the International Union Constitution required members to exhaust internal union grievance procedures before filing a lawsuit against the union or its officers. The Executive Board of Local No. 7 dismissed the charges against Duran in a meeting held on June 8 and 9, 1998. Carlton testified that he did not receive notice of this decision.

On January 29, 1999, the Plaintiffs filed suit in federal court, alleging hybrid claims that under the LMRA Local No. 7 breached provisions of the collective bargaining agreements with its unions and that the unions, ULSSU and OPEIU, breached their duty of fair representation by mishandling the Plaintiffs' grievances. The Plaintiffs also brought claims under the LMRDA. They sought a declaratory judgment that the Defendants' actions violated the LMRDA, reinstatement, back pay, compensatory and punitive damages, and attorneys' fees. The district court granted Defendants' motion for summary judgment on all claims.

## III. DISCUSSION

### A. Standard of Review

This court reviews a summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. *Rice v. Office of Servicemembers' Group Life Ins.*, 260 F.3d 1240, 1249 (10th Cir. 2001). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir.2001). If the moving party does not bear the burden of persuasion at trial, that party may make its *prima facie* showing simply by indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim. *Id.* "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party." *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reason-

ably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. Hybrid § 301 and Unfair Representation Claim

 The district court granted summary judgment to the Defendants on the hybrid § 301 and unfair representation claims on two independent grounds premised on the applicable statute of limitations: (1) the filing of internal charges with Local No. 7 was futile because "it was without power to resurrect their grievances through its own internal dispute resolution procedures"; and (2) even if the filing of the proceedings with Local No. 7 were proper and thus tolled the statute of limitations, the Plaintiffs were nevertheless on inquiry notice that Local No. 7 was not going to grant any relief thirty days after the Executive Board of Local No. 7 denied their claims. The filing of the Plaintiffs' complaint after the applicable statute of limitations was thus too late. Because this court concludes that the parties were on inquiry notice that Local No. 7 had rejected their grievances no later than July 11, 1998, we do not reach the alternative futility grounds relied upon by the district court.

 In general, a union employee must first exhaust the grievance and arbitration procedures provided in a collective bargaining agreement before bringing suit against the employer in federal court. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). The employee will ordinarily be bound by the result of such proceedings in accordance with the finality provisions in the agreement. *Id.* Notwithstanding the outcome of these internal proceedings, however, the Supreme Court has created a judicial exception for cases when "the union representing the employee in the

grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164, 103 S.Ct. 2281. In such hybrid actions, the plaintiff must prove both that the union breached its duty of fair representation and that the employer discharged the plaintiff in violation of its collective bargaining agreement with the union. *See Young v. United Auto. Workers–Labor Employment & Training Corp.*, 95 F.3d 992, 996 (10th Cir.1996). The plaintiff must demonstrate both elements whether the claim is brought against the union, the employer, or both. *See Edwards v. Int'l Union, United Plant Guard Workers of Am.*, 46 F.3d 1047, 1051 (10th Cir.1995).

On appeal, the parties agree that the six month statute of limitations in *DelCostello* applies. 462 U.S. at 169, 103 S.Ct. 2281. The parties also agree that the statute of limitations was tolled during the time the Plaintiffs pursued remedies with ULSSU and OPEIU under the grievance procedures specified in the collective bargaining agreements. The Defendants assert, however, that the statute of limitations had expired by the time the Plaintiffs filed their action in federal court, on January 29, 1999. In particular, the Defendants argue that the filing of charges against Duran with *Local No. 7* on May 12, 1998, did not toll the statute of limitations.

The Plaintiffs advance two arguments why their complaint was timely. First, they argue the Local No. 7 bylaws required them to exhaust internal remedies with Local No. 7, even if futile, before they could file suit in federal court. Thus, they contend, the statute of limitations was tolled during the time they pursued internal remedies with *Local No. 7*, regardless of whether the Plaintiffs were claiming that Local No. 7 breached a duty of fair representation. Second, the Plaintiffs ar-

gue that they did not have proper notice of the Executive Board's decision to dismiss their charges filed with Local No. 7.

This court need not address the issue of whether the filing of an internal union charge with the Plaintiffs' employer, here Local No. 7, tolled the applicable statute of limitations for hybrid claims. We hold that, even if the filing of such charges tolled the limitations period, the Plaintiffs' complaint was untimely.

In addressing the question of what events trigger the commencement of the six-month statute of limitations for hybrid § 301 and unfair representation claims, this court has distinguished between cases in which the union "rejects or abandons the claims of an aggrieved employee at some point in the grievance process" from those when the union "represents an employee throughout a grievance procedure," including arbitration. *See Lucas v. Mountain States Tel. & Tel.,* 909 F.2d 419, 421 (10th Cir.1990) (per curiam). In the case of the former, as here, "the six-month limitations period begins to run when the employee knows or, through the exercise of reasonable diligence, should have known of that union's decision or action." *Id.* We accept without deciding Plaintiffs' argument that Local No. 7 acted as their union when it considered the charges filed against Duran on May 12, 1998.

Article XIV of the Local No. 7 bylaws governs claims for disciplinary actions against its employees. Section A(10) of the Article provides, in pertinent part, that "the trial on the charges shall be held as soon as practicable, but no later than 60 days following the date on which the charges are filed." Article XIV provides for an adjournment of the proceedings "upon request of either party, for good cause shown," or a postponement of any scheduled trial upon the Executive Board's own motion. In either case, the delay shall not exceed 100 days after the date the charges were filed.

Here, the parties do not dispute that the Plaintiffs filed their charges against Duran with Local No. 7 on May 12, 1998. The Defendants presented record evidence that the charges were dismissed on June 8–9, 1998, at a meeting of the Local No. 7 Executive Board.[2] Sixty days following May 12, 1998 was July 11, the last day when a trial could have been held on the charges absent a postponement or adjournment. The Plaintiffs do not allege that they moved for an adjournment or that the Executive Board moved for a postponement. Thus, the Plaintiffs knew, or could have discovered through reasonable diligence, by July 11, 1998, that Local No. 7 had dismissed their charges. At oral argument, Plaintiffs' counsel conceded that the Plaintiffs knew the Executive Board met every month. Whether or not the Plaintiffs received actual notice of the dismissal of their charges is irrelevant in this case; the Plaintiffs have failed to argue, much less demonstrate, why they could not have learned about the dismissal through the exercise of reasonable diligence. The Plaintiffs' complaint filed on January 29, 1999, therefore, came after the expiration of the statute of limitations on January 11, 1999.

The Plaintiffs' arguments to avoid this result are unavailing. They point to the

---

2. The Plaintiffs note correctly that the minutes do not indicate whether the charges discussed at the Executive Board meeting were the Plaintiffs'. As nonmovants, however, the Plaintiffs have the burden of establishing the existence of genuine issues of material fact. They have not brought to this court's attention any record evidence that the charges discussed at the June 8–9 Board meeting were not theirs, nor have they indicated that their charges were decided at any other time.

provision in Section A(10) of Article XIV, which permits the Executive Board on its own motion to postpone any scheduled trial up to 100 days after the filing of charges. The Plaintiffs have not cited anything in the record, however, which indicates such an action took place. At the latest, the Plaintiffs were on inquiry notice after expiration of the sixty-day period on July 11, 1998 that such a postponement did not take place.

■ The Plaintiffs next rely on 29 U.S.C. § 411(a)(4), which establishes a four-month maximum period to exhaust reasonable internal union procedures. That statute, however, governs LMRDA claims, and not the Plaintiffs' hybrid § 301 and unfair representation claim. Even if § 411(a)(4) were applicable, the Plaintiffs asserted at oral argument that it *requires* employees to wait four months before filing suit in court. The Plaintiffs cite no authority in support of this proposition, and the statute itself suggests that it only limits the employer's ability to mandate employees to exhaust reasonable hearing procedures beyond four months.[3] Section § 411(a)(4) therefore has no bearing on the Plaintiffs' hybrid claims.

■ Finally, the Plaintiffs suggest that they were not obligated to appeal to the

United Food and Commercial Workers International Union until they received actual notice of the Executive Board's dismissal. Under Article 26 of the International Union Constitution, a charging party may file a notice of appeal "no later than 15 days from the date the adverse ruling is delivered to the appealing party." Under the Plaintiffs' reading of this provision, however, their LMRA claims would be tolled indefinitely so long as they had not received actual notice of their adverse ruling. The Plaintiffs' interpretation would excuse their failure to inquire about any action on their charges and circumvent this court's holding in *Lucas*. The Plaintiffs do not allege that they attempted to appeal the Executive Board's decision even after months had passed without any apparent notification from Local No. 7. Nor do they argue that they would have appealed any adverse decision if they had received actual notice. The provisions of the International Union Constitution do not save the Plaintiffs' claims.

## C. LMRDA

■ The Plaintiffs also asserted a claim that the Defendants terminated their employment in retaliation for the exercise of free speech rights in supporting Hakes, in violation of 29 U.S.C. § 411(a)(1)-(2).[4]

---

**3.** 29 U.S.C. § 411(a)(4), titled "[p]rotection of the right to sue," provides in its entirety: No labor organization shall limit the right of any member thereof to institute an action in any court, or in a proceeding before any administrative agency, irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding, or the right of any member of a labor organization to appear as a witness in any judicial, administrative, or legislative proceeding, or to petition any legislature or to communicate with any legislator: *Provided,* That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such

organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further,* That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.
29 U.S.C. § 411(a)(4).

**4.** The Plaintiffs' amended complaint does not state a claim under 29 U.S.C. § 529, also known as § 609 of the LMRDA, which forbids "any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline

Congress enacted the LMRDA in part to protect union members' "freedom of expression without fear of sanctions by the union" and to "ensur[e] that unions would be democratically governed and responsive to the will of their memberships." *Finnegan v. Leu*, 456 U.S. 431, 435–36, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). The LMRDA guarantees union members the right to nominate candidates, vote in elections, and participate in membership meetings. 29 U.S.C. § 411(a)(1). The Act also secures members' rights to "meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting." *Id.* § 411(a)(2). Any union member whose freedom of speech and assembly has been infringed may bring a civil action in federal court. *Id.* § 412. These provisions became part of the "Bill of Rights of Members of Labor Organizations," which was ultimately enacted under Title I of the Act, 29 U.S.C. §§ 411–415. *Finnegan*, 456 U.S. at 435, 102 S.Ct. 1867.

In *Finnegan*, the Supreme Court held that the provisions of the LMRDA which safeguard such rights apply only to "rank-and-file union members—not [appointed] union officers or employees, as such." *Id.* at 437, 102 S.Ct. 1867; *but cf. Sheet Metal Workers' Int'l Ass'n v. Lynn*, 488 U.S. 347, 355, 109 S.Ct. 639, 102 L.Ed.2d 700 (1989) (holding that *Finnegan* does not control where the removed union employee held an *elected* position). The Court concluded that Title I promotes "union democracy,

and protect[s] the rights of union *members* from arbitrary action by the union or its officers." *Finnegan*, 456 U.S. at 442, 102 S.Ct. 1867. As such, Title I "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own." *Id.* at 441, 102 S.Ct. 1867. Indeed, the "ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election." *Id.*

The Plaintiffs, who held appointed and not elected union positions, seek to circumvent *Finnegan* by arguing that Local No. 7 terminated their employment as "part of a purposeful and deliberate attempt … to suppress dissent within the union," a situation left unaddressed in *Finnegan*. *See id.* at 441 (referencing *Schonfeld v. Penza*, 477 F.2d 899, 904 (2d Cir.1973)). Although apparently recognizing the viability of a so-called *Schonfeld* exception to *Finnegan*, the Defendants argue that the Plaintiffs may show a deliberate attempt to suppress intraunion factional dissent only by clear and convincing evidence. The Plaintiffs do not address this last argument in their reply brief.

This court has not previously addressed whether a plaintiff may state a LMRDA claim by showing that the loss of employment was part of a deliberate effort to suppress intraunion dissent. We assume without deciding that the Plaintiffs may bring a claim pursuant to *Schonfeld*. Other circuits which have recognized *Schonfeld*-type claims explain that a plaintiff

---

any of its members" for exercising rights protected under the LMRDA. 29 U.S.C. § 529. In *Finnegan v. Leu*, the Supreme Court held that "discipline," as used in § 609, "refer[s] only to punitive actions diminishing membership rights, and not to termination of a member's status as an appointed union employee."

456 U.S. 431, 438, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982). *Finnegan* recognized, however, that a plaintiff may maintain an action under § 102 of the LMRDA, codified as 29 U.S.C. § 412, without necessarily stating a violation of § 609. *See id.* at 439, 102 S.Ct. 1867.

may enforce "only his rights as an individual member, and his right to bring that action is no greater than that of any individual member of the union [whose rights are infringed] as a result of the action taken against him." *Harvey v. Hollenback*, 113 F.3d 639, 643 (6th Cir.1997) (quotation omitted); *see also Adams–Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1158 (5th Cir.1984). In the Sixth Circuit, the plaintiff "must be able to show that his rights were infringed in the same way that any other member's rights might have been infringed by his dismissal, independent of any harm that resulted merely from the loss of his job." *Harvey*, 113 F.3d at 643.

Here, some of the incidents cited by the Plaintiffs which allegedly demonstrate the suppression of political dissent concern only the mere allegation that Duran's political opponents were dismissed after the election. These allegations, however, are foreclosed by *Finnegan* and are not remediable under the LMRDA. *See Finnegan*, 456 U.S. at 442, 102 S.Ct. 1867 ("[I]n enacting Title I of the Act, Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff.").

The Plaintiffs cite only three incidents which do not concern the Plaintiffs' loss of employment: (1) at a February 1998 meeting, Duran allegedly cut off debate about reinstating Plaintiff Carlton as a business representative; (2) at a stewards' conference, Duran publicly disparaged Christine Stambaugh, who had run on Hakes' slate, by stating that she had never liked anything Duran said, and that she had always hated him; and (3) at a stewards' conference in December 1997, Duran said that he would give the staff of Local No. 7 until the first of the year to unite and work together and "if they couldn't do that, he would do it for them."

Viewing this evidence and the reasonable inferences therefrom in the light most favorable to the Plaintiffs, this court concludes that the Plaintiffs have failed to demonstrate a deliberate pattern of political suppression. The incidents cited by the Plaintiffs, even in the aggregate, do not indicate that the Defendants were undermining the democratic governance of the union. In the meeting at which Carlton's reinstatement was discussed, for example, Duran invited others to speak further with him about the issue after the meeting. Although Duran's statements to Christine Stambaugh were belittling, they do not evince a scheme to suppress her views or limit her participation in union activities. Certainly they do not rise to the level of a threat or retaliatory action. Finally, Duran's statement to Local No. 7 members to unite together or else he would do it for them does not, by itself, demonstrate an oppressive scheme that directly threatened the Plaintiffs' Title I rights. The Plaintiffs do not state with any specificity how this isolated statement chilled their free speech rights or otherwise affected their political activities. Nor is there an indication that the statement was directed only to the Plaintiffs and their supporters, as opposed to the union membership at large. Duran's statement is thus insufficient to support the Plaintiffs' *Schonfeld* claim.

The Plaintiffs suggest in their briefs that their loss of employment itself affected their membership rights. Under this theory, their loss of employment deprived the Plaintiffs of access to inside information they could have used to support opposition to Duran, thereby chilling their free speech rights. To the extent that this argument relies on access to confidential or policy-related information, it is foreclos-

ed by *Finnegan*, which recognized that employees supporting the losing candidate in an election may face the displeasure of the successful faction. *See* 456 U.S. at 442, 102 S.Ct. 1867. After their discharge, the Plaintiffs remained members of Local No. 7 and there is no allegation that they were otherwise prevented from gaining access to inside information. Indeed, there is no indication that the Plaintiffs' membership rights were abridged in any way as a result of Defendants' actions.

In their prayer for relief, Plaintiffs only seek reinstatement to their former positions and damages based on lost wages and benefits. A claim for relief under the LMRDA, however, would normally seek injunctive relief to force changes in union policies and practices and/or damages which correspond to the harms suffered from the infringement of the plaintiffs' membership rights. *Cf. Harvey*, 113 F.3d at 644. The Plaintiffs' failure to seek such remedies suggests that their grievance lies solely in their loss of employment and not the infringement of their membership rights as contemplated by the LMRDA and *Finnegan*. We also note that Local No. 7 recalled Verhaeghe to her original position[5] and Duran appointed Risley as a temporary union steward upon her return to King Soopers. Such actions hardly suggest a concerted effort to suppress political dissent. Furthermore, the Plaintiffs concede that Local No. 7 did not lay off several of Duran's political opponents, including Hakes.

Ultimately, the Plaintiffs have failed to present any evidence that their layoffs affected their right to attend meetings, express political opposition, vote, or remain a member of Local No. 7. "In other words, the injury done to the plaintiffs was done to them in their status as [employees], not in their status as individual [union] members." *Adams–Lundy*, 731 F.2d at 1159. Because the Plaintiffs have failed to demonstrate a genuine issue of material fact on their LMRDA claims, the district court properly granted summary judgment to the Defendants.

## IV. CONCLUSION

The order of the district court granting Defendants' Motion for Summary Judgment is **AFFIRMED**.

---

5. Thus, even if Verhaeghe's claims survived summary judgment, her claim for reinstatement to her former position at Local No. 7 is moot.