**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 29 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

KAREN M. MCCRARY,

      Plaintiff - Appellant,

v.

AURORA PUBLIC SCHOOLS, a
governmental entity; JULIE A.
MORRIS, principal of Jewell
Elementary School in the Aurora
Public Schools, in her official and
individual capacity; HAROLD
BEEBE, in his official capacity as
Assistant Superintendent in the
Division of Effective School and
Southeast Quadrant Director for
Aurora Public Schools; ROBERT
ADAMS, in his official capacity as
Assistant Superintendent of Human
Resources for Aurora Public Schools;
KAREN YABLONSKI-TOLL, in her
official capacity as Director of
Employee Relations for Aurora Public
Schools,

      Defendants - Appellees.

No. 02-1098
D.C. No. 00-D-52
(D. Colorado)

---

ORDER AND JUDGMENT  *

---

\*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Before **BRISCOE** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and **HARTZ** , Circuit Judge.

Plaintiff Karen McCrary appeals the district court's grant of summary judgment to defendants on her claims of age discrimination, retaliation, and harassment, disability discrimination and retaliation, equal protection and due process violations, breach of contract, outrageous conduct, and constructive discharge. [1] We exercise jurisdiction under 28 U.S.C. § 1291 and, finding no error in the district court's disposition of these claims, we affirm.

*Background*

At the time of the events at issue here, Ms. McCrary was an elementary teacher at Jewell Elementary School in the Aurora Colorado Public School District. Of concern are events that took place between 1996 and 1999. After teaching fourth grade for many years, Ms. McCrary was assigned to a third-grade classroom for the 1996-1997 school year. That school year was also defendant Julie Morris' first as principal at Jewell Elementary. Before the school year began, plaintiff requested and was granted a leave of absence to care for her

---

[1] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

ailing parents. She was able to return and resume her full teaching responsibilities as of November 1, 1996.

Unfortunately, Ms. McCrary had her own health problems, which resulted in her being absent sixteen times between November 1 and February 10. In her deposition, Ms. McCrary testified that from the mid-1980s on, she had progressively worsening symptoms that included difficulty getting up in the morning, daytime sleepiness, difficulty staying alert and focused–especially in the morning and early afternoon hours–and decreased energy. Her hands also got progressively more stiff and swollen, as did her legs, and her breathing became more labored. There is no evidence that Ms. McCrary informed any of the defendants of her health issues until February 18, 1997. On that day Ms. Morris, responding to parent complaints, informed plaintiff that she was placing her on evaluation. Ms. McCrary then told Ms. Morris that she had recently undergone a sleep study and had been diagnosed with obstructive sleep apnea. Around the same time, Ms. McCrary began using oxygen during the day, which alleviated some of her symptoms.

In May 1997, Ms. Morris gave Ms. McCrary a written performance evaluation reflecting that she failed to meet school district standards in three of five categories. Ms. McCrary submitted a written rebuttal to the evaluation discussing the unique factors that contributed to her difficulties that year. In

June, Ms. Morris developed a remediation plan, to be implemented the following school year, that addressed the issues raised in plaintiff's performance evaluation. After she signed the remediation plan, Ms. McCrary wrote Ms. Morris saying she suffered from two sleep disorders and requesting accommodation for her impairments. Ms. Morris responded by granting those accommodations that were not specifically contradicted by the remediation plan.

Throughout the following school year, Ms. McCrary, Ms. Morris and others continued to discuss plaintiff's performance and her requests for various accommodations. In December 1997, Ms. McCrary received a performance evaluation reflecting that she had met the goals of the remediation plan and now met district standards in all but one category, in which she still needed growth. Accordingly, she was switched from a remediation plan to a growth plan.

In January 1998, Ms. Morris issued plaintiff a letter of reprimand about her handling of a discipline problem, to which Ms. McCrary submitted a letter of rebuttal. In February, Ms. Morris began considering staffing needs for the next school year. Among other things, she considered transferring Ms. McCrary to a new position to be created, called a classroom support teacher (CST), because she thought the position would accommodate most of plaintiff's needs and plaintiff would have the greatest chance of success in that position. Plaintiff, however,

requested that she either be transferred to a vacant fourth-grade classroom position or remain in her current position.

On February 21, Ms. McCrary filed a charge with the EEOC claiming age and disability discrimination. The charge stated for the first time that, in addition to her sleep disorders, plaintiff also suffered from learning disabilities, adult attention deficit disorder (ADD), high blood pressure, and esophagus irritation. Ms. McCrary then submitted another written request for accommodations to the school district.

In early March, Ms. Morris discussed the new CST position with Ms. McCrary and encouraged her to accept it. Ms. McCrary accepted the position on March 15, but in May, her attorney told Ms. Morris that plaintiff intended to seek disability retirement rather than fill the CST position.

On May 13, Ms. Morris gave plaintiff what would be her final written performance evaluation. She determined that plaintiff met district standards in four categories, but continued to need growth in the category of learning environment. Ms. Morris discussed how she thought plaintiff's transfer to the CST position for the following school year would give her the opportunity to improve the learning environment and to maximize her teaching strengths. On May 20, plaintiff submitted a written rebuttal to this performance evaluation.

Shortly before the 1998-1999 school year began, Ms. Morris received notice that plaintiff was taking a leave of absence until her disability retirement application could be approved. Ms. Morris then transferred a fifth-grade classroom teacher into the CST position. On October 27, 1998, Ms. McCrary submitted her letter of resignation, stating that she had been forced to take disability retirement due to her declining health, which she blamed on the school district's refusal to grant all the accommodations she requested.

*Standard of Review*

We review the district court's grant of summary judgment de novo, applying the same standards as did the district court under Fed. R. Civ. P. 56(c). *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). A grant of summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "[I]n ruling on a motion for summary judgment, the [court] must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254.

> [W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment.

*McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (quotations omitted). "[F]ailure of proof of an essential element renders all other facts immaterial." *Koch v. Koch Indus., Inc.* 203 F.3d 1202, 1212 (10th Cir. 2000).

*Age-Based Claims*

*1. Discrimination Claim*

We turn first to Ms. McCrary's claim of age discrimination under the Age Discrimination in Employment Act (ADEA). "It is well settled that an ADEA plaintiff must establish that age was a determining factor in the employer's challenged decision." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir. 1988) (quotation omitted). "A party may attempt to meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor" in the challenged decision, or the party may meet his burden indirectly by relying on the familiar burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *Lucas*, 857 F.2d at 1400. Here, plaintiff argued that she established her claim of age discrimination by both methods.

"Proof by direct evidence requires evidence that the actual motive behind the [challenged employment action] was discriminatory animus. Evidence demonstrating discriminatory animus in the decisional process needs to be distinguished from stray remarks in the workplace, statements by

-7-

nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1126 (8th Cir. 2000) (quotation and citation omitted).

Ms. McCrary alleged that she was discriminated against based on the following conduct: she was accused of professional incompetence; Ms. Morris placed her on evaluation outside the normal evaluation cycle; Ms. Morris gave her an adverse performance evaluation in May 1997 and placed her on a remediation plan with work restrictions; Ms. Morris moved her from the remediation plan to a growth plan with similar work restrictions; Ms. Morris placed a letter of reprimand in her personnel file that was not removed until she resigned; Ms. Morris denied her request to be transferred to a fourth-grade classroom teacher position for the 1998-1999 school year; Ms. Morris instead transferred her to the CST position for that school year; and the school district refused her request to expand the scope of a grievance she filed in September 1998 and the school district successfully challenged the grievance on timeliness grounds rather than allowing it to be adjudicated on the merits.

Ms. McCrary contended that two comments made by Ms. Morris constituted direct evidence that the foregoing conduct was motivated by discriminatory animus based on plaintiff's age. The first comment was made at a February 1998 meeting of a parent/staff committee at which Ms. McCrary, admittedly, was not

present. Based on what she heard from others, she alleged that Ms. Morris commented at the meeting that there were too many old, white, female teachers at Jewell. Ms. Morris testified in her deposition that this mischaracterized what she said. She testified that the committee was setting hiring priorities for the coming school year and the question arose whether there was any need to keep the affirmative action statement in the school's policies on hiring. Ms. Morris testified that she responded, "If you look around at the teaching staff in the building, almost all of us are old white women like me." Aptl. App., Vol. II at 334. The second comment Ms. Morris allegedly made was that the school had an aging staff that had been together for awhile. Ms. McCrary did not provide any specifics about when, where, or under what circumstances Ms. Morris allegedly made this comment.

Even if Ms. Morris made the remarks, plaintiff presented no evidence that either of the remarks was related to the decisional processes involved in any of the actions that she challenged. While the first remark might have had some relation to the staffing decisions Ms. Morris made for the 1998-1999 school year in general, the evidence does not suggest that it had any relation to the decision to transfer plaintiff to the CST position in particular. Moreover, as discussed below, Ms. McCrary's proposed transfer to that position was merely a lateral transfer; it did not constitute an adverse employment action that could give rise to liability

under the ADEA.  Ms. McCrary, therefore, failed to establish her claim of age discrimination by the direct method.

To establish her claim of age discrimination by the indirect method, Ms. McCrary bore "the initial burden of setting forth a prima facie case of discrimination." *Sanchez v. Denver Pub. Schools*, 164 F.3d 527, 531 (10th Cir. 1998).  This required plaintiff to show, among other things, that she suffered an adverse employment action.  *Id.*  The district court concluded that Ms. McCrary failed to establish this element of her prima facie case.

The court reasoned that the only challenged conduct that could possibly qualify as an adverse employment action was plaintiff's proposed transfer to the CST position for the 1998-1999 school year.  Based on this court's decision in *Sanchez*, the district court concluded that because Ms. McCrary would have remained an elementary school teacher and would not have suffered any reduction in benefits, pay, or seniority as a result of the transfer, the proposed transfer did not constitute an adverse employment action that could give rise to liability under the ADEA.  On appeal, Ms. McCrary disputes both the district court's determination that her proposed transfer to the CST position did not constitute an adverse employment action and its determination that none of defendants' other challenged conduct constituted an adverse employment action.

A "tangible employment action" that may give rise to liability "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). In determining what constitutes a tangible or adverse employment action, "we take a case-by-case approach, examining the unique factors relevant to the situation at hand. Nevertheless, we will not consider a mere inconvenience or alteration of job responsibilities to be an adverse employment action." *Sanchez*, 164 F.3d at 532 (quotations and citation omitted).

We conclude that Ms. McCrary did not meet her burden of establishing that the proposed transfer to the CST position was an adverse employment action. Ms. McCrary did not dispute that she would have received the same salary and benefits in the CST position and that her seniority would not have been affected by the transfer. She argued that the transfer was a demotion, nonetheless, because it was made against her will and because the responsibilities of the job were significantly different. "If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the

denial or receipt of the transfer adverse employment action." [2] *Id.* at 532 n.6; *see also Marrero v. Goya of P.R., Inc.*, 304 F.3d 7, 25 (1st Cir. 2002) ("It is not enough that [plaintiff] felt stigmatized and punished by the transfer. A more tangible change in duties or working conditions is needed before we can conclude that the transfer was, in substance, a demotion.") (quotation omitted).

Further, Ms. McCrary made only conclusory allegations about the differences between the duties of a third-grade classroom teacher and those of the CST, and the evidence did not establish that the responsibilities of the two jobs were significantly different. *See, e.g., Sanchez*, 164 F.3d at 532 (holding that plaintiff failed to establish that job responsibilities of classroom teacher were significantly different from those of van teacher); *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640-41 (2d Cir. 2000) (holding that plaintiff failed to establish that previous position at special education junior high school was sufficiently different from new position at mainstream high school for transfer to be adverse employment action).

As for the other challenged conduct, we agree with the district court that none of it gave rise to liability under the ADEA. Even if Ms. McCrary's placement on either the remediation plan or the growth plan could be considered

---

[2]    For this same reason, Ms. Morris' denial of Ms. McCrary's request to be transferred from her third-grade classroom teaching position to a fourth-grade classroom teaching position was not an adverse employment action.

an adverse employment action because the requirements of the plans adversely affected the conditions under which she performed her job, she did not show that either action occurred under circumstances giving rise to an inference of age discrimination, nor did she show that the stated reasons for the requirements of either plan were pretextual. Because plaintiff failed to establish her claim of age discrimination by either the direct or the indirect method, the district court properly entered summary judgment against plaintiff on that claim.

*2. Retaliation Claim and Harassment Claim*

To survive summary judgment on her claim of age-based retaliation under the ADEA, Ms. McCrary also bore the burden of establishing a prima facie case. To do so, she had to show "1) she was engaged in opposition to . . . ADEA discrimination; 2) she was subjected to adverse employment action; and 3) a causal connection existed between protected activity and the adverse employment action." *Sanchez* , 164 F.3d at 533. Ms. McCrary argued that she engaged in opposition to ADEA discrimination when she wrote a letter of rebuttal to her May 1997 performance evaluation and when she filed two grievances against the school district, one for the January 1998 letter of reprimand and one for the transfer to the CST position. She further argued that she was retaliated against for her letter of rebuttal by being placed on a remediation plan and that she was

retaliated against for her grievances by being denied her requests for accommodation and by being transferred to the CST position.

Ms. McCrary's rebuttal of her performance evaluation did not speak to age discrimination in any fashion and, therefore, did not constitute protected opposition to age discrimination. The same can be said of her grievance of the January 1998 letter of reprimand. Her grievance of the proposed transfer to the CST position, lodged on September 17, 1998, did allege that she was the victim of age discrimination. But the grievance was not causally related to any adverse action taken against her. Therefore, summary judgment on plaintiff's age-based retaliation claim was proper. Ms. McCrary produced no evidence to support her claim of age-based harassment. Summary judgment was proper on this claim as well.

*Disability-Based Claims*

*1. Discrimination Claim*

To survive summary judgment on her claim for disability discrimination under the Americans With Disabilities Act (ADA), Ms. McCrary "bore the burden of raising a genuine issue of material fact on each element of her prima facie case." *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000). To do so, she had to show "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential

functions of the job held or desired; and (3) the employer discriminated against her because of her disability." *Id.* "Disability is a term of art under the ADA." *Id.* To satisfy the statutory definition of disability, plaintiff had to show either that she had "a physical or mental impairment that substantially limits one or more of [her] major life activities," or that she had "a record of such impairment," or that she was "regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). Ms. McCrary claimed that she met the first prong of the definition. Accordingly, she had to establish that she had a physical or mental impairment, she had to identify one or more affected activities that qualified as a major life activity (MLA), and she had to show that her impairment(s) substantially limited one or more of the identified MLAs. *See Doyal*, 213 F.3d at 495.

In response to summary judgment, Ms. McCrary argued that she suffered from the following physical or mental impairments, which limited the following MLAs: (1) mild to moderate learning disabilities and ADD, which limited her ability to learn, to concentrate, to think, and to work; (2) obstructive sleep apnea-hypopnea, central sleep apnea-hypopnea, and periodic limb movement disorder, which limited her ability to sleep; and (3) a swollen trachea and pulmonary disease, which limited her ability to breathe, to eat, to lift, and to walk. At the outset, we note that this court has held that concentration is not itself an MLA,

-15-

though it may be a component of some other MLA, such as working or learning. *Pack v. Kmart Corp.*, 166 F.3d 1300, 1305 (10th Cir. 1999). The other MLAs Ms. McCrary identified have been recognized by this or other courts as such, so we will assume they are valid MLAs for purposes of our analysis.

To establish her prima facie case, plaintiff had to show not just some limitation of the designated MLAs, but a substantial limitation. The regulations define the term "substantially limits" as follows:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or

> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j). If the MLA is working, however, the regulations define "substantially limits" as "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.* § 1630.2(j)(3)(i). Further, "if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures–both positive and negative–must be taken into account when judging whether that person is 'substantially limited' in a major life activity." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482 (1999).

-16-

Ms. McCrary did not contend that she was completely unable to perform any of the MLAs she identified. Therefore, she had to show that she was significantly restricted as to the condition, manner, or duration under which she could perform each identified MLA *as compared with the average person*. We turn first to plaintiff's contention that her learning disabilities, including her ADD, substantially limited her ability to learn, to think, and to work. Plaintiff presented an evaluation of her learning disabilities performed by Dr. McDonald. His written report, coupled with his deposition testimony, showed that although plaintiff had some deficits in her ability to think and to learn when compared with what would be expected from someone with her strengths, even her deficits were within the average range. Dr. McDonald testified that generally, Ms. McCrary was functioning at or above average as compared to the general population, though on a particular day she might not be. This evidence was not sufficient to establish a significant limitation in Ms. McCrary's ability to think or to learn.

As to her ability to work, Ms. McCrary contended that her impairments substantially limited her ability to perform her job as a teacher. "Inability to perform a single, particular job is not a substantial limitation." 29 C.F.R. § 1630.2(j)(3)(i). Ms. McCrary did not present any evidence that she was limited in her ability to perform either a class of jobs or a broad range of jobs in various

classes. Therefore, she did not establish a substantial limitation in her ability to work.

We turn then to plaintiff's sleep disorders and their effect on her ability to sleep. Ms. McCrary presented studies from two sleep clinics and deposition testimony from Dr. Scima on her sleep disorders. Dr. Scima testified that Ms. McCrary's sleep disorders affected the quality, not the quantity, of sleep she obtained. Plaintiff completed her first sleep study in February 1997. In April, she underwent a second study to determine if use of a CPAP machine at night would ameliorate her symptoms, and she began using a CPAP machine at the end of April. In July, she underwent a third sleep study, this time by Dr. Scima. This third study revealed that Ms. McCrary did not suffer from narcolepsy, as she had previously thought, but that she did suffer from moderate periodic limb movement disorder in addition to both moderate obstructive sleep apnea/hypopnea and moderate central sleep apnea/hypopnea. The study also revealed that plaintiff needed to increase the amount of oxygen pressure on her CPAP machine.

Following this July 1997 study, Ms. McCrary saw noticeable improvement in the quality of her sleep, and Dr. Scima testified that plaintiff's sleep disorders were no longer the cause of any interference with her work. When plaintiff returned for a follow-up visit on October 6, 1997, Dr. Scima was no longer concerned with the quality of her sleep, only with the fact that she was getting

-18-

fewer hours of sleep because she was working longer hours. Based on the evidence presented, including the ameliorative effects of treatment for her sleep disorders, we conclude that Ms. McCrary did not present a triable issue of fact as to whether her sleep disorders were sufficiently severe, long term, or of permanent impact to substantially limit her ability to sleep. *See* 29 C.F.R. § 1630.2(j)(2).

In her response to summary judgment, Ms. McCrary claimed that she also suffered from a swollen trachea as a result of her sleep apnea and from pulmonary disease. She claimed that these two impairments limited her ability to breathe, to eat, to lift, and to walk. Plaintiff presented little to no evidence of the effects of her swollen trachea or her pulmonary disease on her ability to breathe. The sleep studies and Dr. Scima's testimony did provide some information about plaintiff's oxygen saturation levels while at rest and asleep, but plaintiff made no attempt to tie this evidence to her claim that she was substantially limited in the MLA of breathing.

The district court held that Ms. McCrary failed to show a substantial limitation on her ability to breathe because her use of supplemental oxygen during her waking hours ameliorated any limitations on her breathing. Plaintiff argues on appeal that this holding was in error because her use of oxygen during the day did not alleviate her sleep disorders. Plaintiff misunderstands the inquiry here.

To withstand summary judgment, she had to present sufficient evidence to create a triable issue of fact as to whether her ability to breathe, taking into account the ameliorative effects of her use of supplemental oxygen during the day and a CPAP machine at night, was substantially limited as compared to that of the average person. Ms. McCrary's minimal evidence was not sufficient to create a triable issue as to this fact.

Likewise, Ms. McCrary failed to present any evidence demonstrating that she was substantially limited in her ability to eat, to walk, or to lift as compared to the average person. Not only did she present little or no evidence about her own limitations, but she presented no evidence from which a factfinder could make a comparison between her abilities and those of the average person. *See* 29 C.F.R. § 1630.2(j); *Doyal*, 213 F.3d at 497 (holding plaintiff failed to demonstrate a significant impairment where she introduced no evidence suggesting she experienced a greater difficulty than others in performing an activity).

In sum, we conclude that the district court properly entered summary judgment against Ms. McCrary on her claim of disability discrimination because she failed to establish that she had a disability as defined in the ADA. Because Ms. McCrary's discrimination claim failed at this threshold level, we need not address any of the issues she raises on appeal with regard to reasonable accommodation.

-20-

## 2. Retaliation Claim

To establish a prima facie case of retaliation under the ADA, Ms. McCrary had to prove the following elements: "(1) that she engaged in an activity protected by the statute; (2) that she was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; [and] (3) that there was a causal connection between the protected activity and the adverse action." *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001) (quotation and brackets omitted). On appeal, she challenges the district court's grant of summary judgment on this claim solely on the ground that her proposed transfer to the CST position was an adverse employment action. We have already concluded, however, that the transfer was not an adverse employment action.

## Section 1983 Claims

Ms. McCrary asserted claims against all the defendants under 42 U.S.C. § 1983 for allegedly violating her rights to due process and equal protection. In particular, she claimed that she was denied due process when defendants failed to inform her of the name of the ADA coordinator for the school district and when defendants negotiated with her about accommodations for her impairments without involving the ADA coordinator. She claimed that the school district further denied her due process when it refused to waive the defense of untimeliness and agree to adjudicate her grievance on the merits. Ms. McCrary

claimed that the school district and Ms. Morris violated her right to equal protection when Ms. Morris did not consider her for an available fourth-grade classroom position for the 1998-1999 school year and instead transferred her to the CST position.

The district court ruled that there was no evidentiary support for these claims. We agree. The record is replete with evidence that various school district employees negotiated with plaintiff at length as to possible accommodations for her claimed impairments. There is no evidence that defendants' failure to inform Ms. McCrary of the identity of the district's ADA coordinator or to involve the coordinator in those negotiations denied plaintiff any of the process she was due. Nor is there any evidence of, or legal support for, Ms. McCrary's claim that the school district's valid assertion of a limitations defense to plaintiff's grievance denied her due process. As to Ms. McCrary's claim that her right to equal protection was violated when she was not considered for a fourth-grade classroom position and instead was transferred to a CST position, we have already concluded that neither of those actions constituted an adverse employment action, and Ms. McCrary has not otherwise shown that they gave rise to an injury for purposes of § 1983.

*Breach of Contract Claim*

Ms. McCrary also asserted what she characterized as a state law breach of contract claim against the school district. The district court, believing plaintiff was asserting a claim for breach of an implied contract based on the employee manual, ruled that the manual did not create a contract. On appeal, Ms. McCrary states that it was not her intent to assert a claim for breach of implied contract based on the employee manual. Rather, she intended to assert a claim for breach of express contract as a third-party beneficiary to the collective bargaining agreement between the school district and the teachers' union.

Ms. McCrary claims that the school district violated the collective bargaining agreement by discriminating against her on the basis of her age and her disabilities, by limiting her access to the school building after hours, and by assigning her to the CST position for which she did not have the required training. Ms. McCrary's state law claim for breach of the collective bargaining agreement is preempted by § 301 of the Labor Relations Management Act, 29 U.S.C. § 185. *See Mock v. T.G. & Y. Stores*, 971 F.2d 522, 529 (10th Cir. 1992) ("Under the LMRA, if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement the state-law claim is preempted.") (quotation omitted).

When a party's state law claims are preempted under § 301, the court must either dismiss the claims as preempted or treat them as arising under § 301. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 221 (1985). "An employee can bring suit under § 301 of the LMRA only if he or she has exhausted the contractual remedies provided in the collective bargaining agreements." *Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1463, 1471 (10th Cir. 1993). Ms. McCrary did not demonstrate that she exhausted her remedies under the collective bargaining agreement. Therefore, any claim under § 301 was properly subject to dismissal.

*Outrageous Conduct Claim*

Ms. McCrary also asserted a state law claim for outrageous conduct against Ms. Morris based on her conduct toward plaintiff from January through May 1998. The district court ruled that none of this conduct rose to the level of outrageous conduct as a matter of law. For her claim of outrageous conduct to survive summary judgment, Ms. McCrary had to demonstrate that Ms. Morris' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Coors Brewing Co. v. Floyd*, 978 P.2d 663, 666 (Colo. 1999) (quotation omitted). We agree with the district court that Ms. McCrary did not make this required showing.

*Constructive Discharge Claim*

Finally, Ms. McCrary appeals the district court's entry of summary judgment on her claim for constructive discharge. "To prevail on her claim for constructive discharge, plaintiff must establish that, because of her age" or, in this case, her disability, "defendant subjected her to working conditions so intolerable that a reasonable person would feel compelled to resign." *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir. 2001). Again, Ms. McCrary's evidence was not sufficient to meet this standard and so survive summary judgment.

Accordingly, the district court's judgment is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge