Cheri L. KLINDT, Plaintiff,

v.

**HONEYWELL INTERNATIONAL INC., Defendant.**

No. 02–4081–JAR.

United States District Court, D. Kansas.

Feb. 19, 2004.

Beth R. Foerster, James E. Benfer, III, McCullough, Wareheim & LaBunker, P.A., Topeka, KS, for Plaintiff.

J. Nick Badgerow, Katherine Miller, Spencer, Fane, Britt & Browne, Overland Park, KS, for Defendant.

***MEMORANDUM ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***

ROBINSON, District Judge.

This case stems from plaintiff Cheri Klindt's working relationship with defendant Honeywell International Inc. ("Honeywell"), and the termination of that

relationship. Plaintiff claims that she experienced gender and age discrimination, pay disparity, and constructive discharge while employed at Honeywell. This matter is presently before the Court on Honeywell's motion for summary judgment (Doc. 96) on each of plaintiff's claims. As set forth in more detail below, Honeywell's motion is granted in part and denied in part.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Honeywell has a manufacturing facility located in Lawrence, Kansas. Plaintiff is a female who was 46 years old when she left Honeywell's employment in 2001.

Plaintiff began working for Honeywell at its Lawrence facility as an assembler in 1985. Effective September 21, 1998, plaintiff became a Production Technician II in the Quantum department and was assigned to work on the RTA–44D line. This was a lateral move, as plaintiff was a Production Technician II in Singapore verification prior to her move to Quantum.

In 1996, the Lawrence facility implemented the Career Path process, which defined pay bands for each hourly position. The rates for each position and employee are based on the year's matrix for that position. Honeywell has three paths for hourly associates: Production Technician, Electronic Technician and Maintenance Technician. When Ronalea Hays became Human Resources Manager at the Lawrence facility in July 1998, she implemented a "Best Practices" policy that included a skills chart listing the educational requirements for each position. The hourly rate of pay for Production Technicians ranges from $8.00 to $16.00 per hour; a high school diploma/GED is required; and pay increments increase based on years of experience. The hourly pay rate for Electronic Technicians ranges from $10.00 to $20.00 per hour; an associate degree in electronics is required, with a technical school or military certificate as an alternative to degree; and pay increments increase based on years of experience.

Edna Saxton was the supervisor of production, then the manufacturing supervisor (also called product line coach) of the RTA–44D line in Quantum during the time period when plaintiff was employed in Quantum. Plaintiff came under Saxton's supervision in 1999. Terry Jackson was plaintiff's manufacturing supervisor prior to Saxton.

In 1999, plaintiff alleges she was told by Terry Knight, who was involved in test engineering, to troubleshoot to the component level. She was asked to help the "techs," meaning Electronic Technicians, in any way she could and to learn what she could. Plaintiff wrote down the procedures that she and Electronic Technician Shawn Rundle used to troubleshoot to the component level to repair failures on the units. Rundle testified that plaintiff made such notes at his direction after he made the repairs. The written procedures are ones that an Electronic Technician would use to fix failures in RTA units. Other employees at Honeywell on the Quantum Line also kept track of failures and repair methods in a notebook, called a "Cookbook."

As a Production Technician II in Quantum, plaintiff performed routine electronic testing on units or sub-assemblies and operated automated test equipment on units or sub-assemblies. Electronic Technicians also do testing as part of their job responsibilities, with the additional duty of troubleshooting to the component level. Master Routing Test Process Sheets are Honeywell business records documenting the work (testing, repairs, etc.) an employee was doing on a particular unit. Plaintiff

cites to numerous incidents where she allegedly performed troubleshooting to the component level. Honeywell disputes that any of the repairs plaintiff cites required troubleshooting to the component level, but rather, were repairs that could also be performed by Production Technician II's; if issues arose needing Electronic Technician skills, the unit was sent on to an Electronic Technician. However, for purposes of this motion, Honeywell assumes that plaintiff was troubleshooting digital, analog and RF circuitry to the component level, which she knew was not part of her position as a Production Technician II.

Plaintiff claims that she quit troubleshooting to the component level because she wasn't getting paid for it. After the reject shelf filled up, plaintiff alleges that Saxton told her "don't cut off your nose to spite your face," which plaintiff interpreted as telling plaintiff that she should be doing Electronic Technician work. Shawn Rundle and Jean Schwonke, a Manufacturing Electronic Technician, testified that they told plaintiff on several occasions not to troubleshoot to the component level because it was not part of her job.

In October 2000, Honeywell posted two openings for an Electronic Technician. The announcement identified the required degree level of high school diploma/GED, with an Associate Degree, Technical School Certification or equivalent Military experience preferred.[1] Plaintiff applied for the position and was one of four internal applicants selected for interview. The other applicants were Jeff Kueser, who had been employed at Honeywell since January 1998; Mike Spangler, who had been employed at Honeywell since September 1998; and Patrick Martinez, who

had been employed at Honeywell since May 1999.

It is standard practice at the Lawrence facility to evaluate the technological abilities of applicants for technical positions through oral or written testing. All four applicants selected for interview for the October 2000 openings were tested by Gus Velasquez, a software engineer at Honeywell, who also held the titles of Engineer I and Engineer II. Velasquez testified that he wrote the test and that it gave him a "pretty good indication" of whether a person could troubleshoot to the component level. He further testified that an applicant's experience on the line was also an important factor in evaluating this skill.

Ms. Saxton followed her supervisor's recommendation that management and technical personnel with stronger electronics background be involved in the application and decision making process. Six Honeywell employees interviewed and evaluated the applicants: Jean Schwonke; Duane Sawyer, a Manufacturing Engineering Technician; Kevin Maxon, a "Coach"; Barbara DeVoe, a "Coach"; Gus Velasquez; and Edna Saxton.[2] Each interviewer completed an Interview Rating Sheet. Each applicant was rated on the following skills and/or attributes: education, experience, functional skills, aptitude, initiative, leadership, growth potential, communication skills, manner and attitude, and interpersonal skills. Each applicant was further evaluated on their "career architect skills," which included evidence of the ability to troubleshoot to the component level digital, analog and RF circuitry. Under "technical/job skills," to be evaluated, an associate degree, technical school certificate or equivalent military experience in electronic technology was preferred.

---

1. Plaintiff's Ex. 10. Ronalea Hays testified that an associate degree/equivalent military experience was required, despite the job announcement stating it was preferred.

2. Plaintiff disputes that Saxton interviewed her for the October 2000 position; it is uncontroverted, however, that Saxton evaluated plaintiff for the position.

Plaintiff alleges that she was not asked any technical questions during the interviews. Velasquez's rating sheet indicated that there was strong evidence of plaintiff's ability to troubleshoot to the component level, and he recommended plaintiff for promotion to Electronic Technician. Devoe also recommended plaintiff for promotion, citing her ability to learn and be a team player. Schwonke and Sawyer's rating sheets indicated that plaintiff needed further consideration, citing lack of training and ability to troubleshoot to the component level. Saxton and Maxon recommended not to promote plaintiff, citing lack of experience and training. Saxton further noted that plaintiff was a hard worker who takes pride in her work. Plaintiff was the lowest scoring of the four candidates, receiving an average 29.83 out of a possible 40 points in the skills evaluation of the interviews and a 55% on the written examination. Plaintiff did not have an associate degree or equivalent military experience, although she had completed a basic electronics course through Honeywell's educational reimbursement program.

By contrast, all of the interviewers recommended Jeff Kueser for hire, and five recommended Mike Spangler for hire.[3] Kueser, who was already an Electronic Technician and had an associate degree, received nearly perfect scores on both the interviews and written test.[4] Spangler, who worked on the Quantum Line, had an associate degree as well as experience troubleshooting, although not with RF circuitry. Spangler also scored high on the interviews, and scored slightly better than plaintiff on the written test.[5]

The six interviewers were the decision makers for the hiring selections. They met as a group after the interviews and tests, and reached a consensus to hire Kueser and Spangler for the Electronic Technician openings. The other unsuccessful candidate, Pat Martinez, did not have an associate degree, equivalent military experience or technical school certificate.[6] Each of the interviewers testified that they did not take into consideration gender or age of the applicants in deciding whom to hire.

Each Electronic Technician hired into Quantum between September 1998 through March 2001, the date plaintiff resigned, had either an associate degree or equivalent military experience. This was part of Honeywell's Best Practices incorporated by Ronalea Hays shortly after she became Human Resources Manager in Lawrence in July 1998.

Plaintiff testified that, a few days before she was denied the promotion, Ms. Saxton told her that she was blessed to have a husband with a good job and a side business; that Saxton had young men with families at the facility; that there were girls in Saxton's department that couldn't make it from one paycheck to the next; and that plaintiff was fortunate not to have that worry.[7] Plaintiff further testified that

---

**3.** Kevin Maxon did not indicate on the interview form whether he recommended Spangler for hire, but commented that he would make an "outstanding tech and team member."

**4.** Kueser received 38.50 out of 40 in the interviews and scored 90% on the written examination.

**5.** Spangler received a 36.83 out of 40 in the interviews and scored 60% on the written examination.

**6.** Martinez received 29.33 out of 40 in the interviews and scored 70% on the written examination.

**7.** Saxton denies that she made these statements to plaintiff; for purposes of this motion only, Honeywell assumes that Saxton made the comments.

when Ms. Saxton told plaintiff she didn't get the job, she told plaintiff that she should be proud of her ratings and that she scored high in all areas except her electronics experience. Plaintiff expressed to Saxton that the promotion decision wasn't fair and that she should have been promoted to the Electronic Technician position over Jeff Kueser because she was "already doing the job," and that she was "better than" Mike Spangler.

Plaintiff contends that she subsequently trained Jeff Kueser to troubleshoot to the component level; Kueser disputes this, and testified that plaintiff merely showed him how to make visual repairs. Plaintiff testified that Terry Jackson asked her whether she could write her name on the ground (with urine). Plaintiff took this to mean that Mr. Jackson was pointing out the difference between men and women. Plaintiff also testified that an Electronic Technician, Shawn Rundle, made comments about men being better "techs" than women.

In December 2000, Ms. Saxton informed plaintiff that she wanted her to move to the RF sub-assembly bench and train with Aaron Reith, an Electronic Technician on the RF sub-assembly bench. The RF sub-assembly is a component of the RTA–44D. Ms. Saxton instructed plaintiff that she was not to do any work that was not Production Technician II work. Plaintiff moved to the RF sub-assembly bench in January 2001. Her pay and job title did not change with the move, although she was asked to come in additional hours to train on the RF bench. Ms. Saxton viewed the move as an opportunity for plaintiff to attain technical experience, noted as lacking in the October 2000 application process. Plaintiff, however, viewed the move as a demotion, although she also contends that the only work available on the bench was Electronic Technician work.

Plaintiff contends that she cried nearly every day at work during this time period, and that being treated differently made the position intolerable. Plaintiff quit her employment with Honeywell on March 9, 2001. Plaintiff's reasons given for quitting were other job opportunities, either at another company or with her husband. Plaintiff expressed to co-workers that she would have stayed at Honeywell for a 10–cent or 25–cent per hour raise. She did not tell anyone at Honeywell that she felt discriminated against on the basis of gender or age, nor did she complain that she was not being paid for the job she was doing.

On April 20, 2001, Corey Mann was hired as an Electronic Technician. Mann was not required to complete an electronics test, and was interviewed by two rather than six individuals. Mann was a recent graduate of technical school, and had an associate degree.[8] Saxton testified that she did not know Mann had not completed the written test when she hired him.

## II. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[9] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[10] Essentially, the inquiry is "whether the evidence presents

---

8. Plaintiff's Ex. 18.

9. Fed.R.Civ.P. 56(c).

10. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." [11]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[12] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[13] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." [14] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[15] The court must consider the record in the light most favorable to the nonmoving party.[16]

The court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." [17]

## III. Discussion

### A. Failure to Promote

■ Plaintiff does not provide direct evidence of age or sex discrimination. The Court therefore must analyze plaintiff's indirect evidence under the burden-shifting approach set forth in *McDonnell Douglas v. Green.*[18] To establish a prima facie case for discriminatory failure to promote under Title VII, plaintiff must demonstrate: 1) there was a promotional opportunity available; 2) plaintiff was qualified and had established availability for the position; 3) despite the plaintiff's qualifications, she was not promoted to the position; and 4) the promotional opportunity remained open or was filled.[19] An ADEA plaintiff must establish that age was a "determining factor" in the employer's challenged decision.[20]

Honeywell concedes that plaintiff meets the first and fourth prongs of the prima facie case. Accordingly, the Court limits its analysis to the second and third prongs.

Honeywell contends that plaintiff was not qualified for the Electronic Technician position because she had neither an associate degree nor equivalent military experience, which were requisites for the position. Plaintiff counters that she was qualified because of her employee-reimbursed electronics course and her on-the-

---

11. *Id.* at 251–52, 106 S.Ct. 2505.

12. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

13. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

14. *Id.*

15. *See id.*

16. *See Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984), *cert. denied* 469 U.S. 1214, 105 S.Ct. 1187, 84 L.Ed.2d 334 (1985).

17. *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

18. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

19. *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1362 (10th Cir.1997); *see also Amro v. Boeing Co.,* 232 F.3d 790, 796 & n. 2 (10th Cir.2000) (clarifying that the fourth prong does not require a showing that the position "was filled by someone outside the plaintiff's protected class.")

20. *Lucas v. Dover Corp., Norris Div.,* 857 F.2d 1397, 1400 (10th Cir.1988).

job experience troubleshooting to the component level. Plaintiff further contends that the posting required only a high school education, with an associate degree, technical school certificate or military experience "preferred." Although Honeywell contends that a degree or equivalent military experience were required, the job posting for the position states that this level of education was preferred. Ronalea Hays testified that the notice said preferred so Honeywell "would be covered" if they had a candidate who did not have a degree. It is unclear from the record whether the electronics course plaintiff completed constitutes a "technical school certificate" as contemplated by the job posting. Apparently, plaintiff's qualifications merited an interview. Accordingly, the Court will assume for purposes of summary judgment only that plaintiff was qualified and that she was denied the promotion to Electronic Technician despite her qualifications.

▆ "Once the plaintiff has established a prima facie case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual."[21] Honeywell asserts that plaintiff was not promoted because she was the least qualified of the four candidates according to both the test scores and

the interview scores. The Court finds that Honeywell has met its burden of providing a facially nondiscriminatory reason for not promoting plaintiff. The only remaining issue, then, is whether plaintiff has shown "that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual."[22]

To establish pretext a plaintiff must show either that "a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence."[23] Plaintiff may accomplish this by demonstrating " 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.' "[24] However, the plaintiff's "mere conjecture that [her] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[25]

Plaintiff bases her pretext argument on the following evidence: Saxton's statement to plaintiff that she had young men with families to support and plaintiff had her husband to support her; Spangler was not as qualified as plaintiff, who had more experience on the product line and was more qualified to troubleshoot; and, plaintiff was not asked any technical questions in her interviews for the Electronic Technician position.

---

**21.** *Kendrick v. Penske Trans. Services, Inc.,* 220 F.3d 1220, 1226 (10th Cir.2000) (quoting *McDonnell Douglas,* 411 U.S. at 802, 804, 93 S.Ct. 1817). Analysis of age discrimination claims under the ADEA follows the same *McDonnell Douglas* burden-shifting scheme. *Lucas,* 857 F.2d at 1400.

**22.** *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1317 (10th Cir.1999) (quoting *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir.1995)).

**23.** *Id.* (quoting *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

**24.** *Id.* (citing *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997) (quotation omitted)).

**25.** *Id.* (citing *Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir.1988)).

The Court notes that plaintiff also makes allegations about missing or incomplete tests from a younger male applicant for an Electronic Technician opening in April 2001. Specifically, plaintiff contends that Corey Mann was hired as an Electronic Technician despite the fact that he did not complete the written test. Defendant argues that because plaintiff did not apply for this opening, she cannot compare Mr. Mann's hiring situation to her own October 2000 application.[26] There is no dispute that plaintiff did not apply for the April 2001 position, having resigned from Honeywell the previous month. Plaintiff argues that she can compare her situation to Corey Mann's, despite the fact that she did not apply for that position, under the futile gesture doctrine.

■ While the "law does not require that a plaintiff formally apply for the job in question," the law does require "that the employer be on specific notice that the plaintiff seeks employment or, where informal hiring procedures are used, that the plaintiff be in the group of people who might reasonably be interested in the particular job."[27] In this case, the uncontroverted evidence shows that Honeywell used a formal hiring procedure for hiring, including the position of Electronic Technician; Honeywell posts all open positions.

■ A plaintiff who has failed to apply for a position may establish a prima facie case of discrimination by demonstrating that "[s]he would have applied but for accurate knowledge of an employer's discrimination and that [s]he would have been discriminatorily rejected had she actually applied."[28] The futile gesture exception requires a showing of a pervasive, consistent, and continuing pattern or practice of discrimination in order to justify excusing the plaintiff from the requirement of applying for the position.[29] Application must be "a vain and useless act."[30]

Plaintiff has not established that Honeywell had a consistently enforced discriminatory policy such that application for the 2001 position would have been futile. The fact that plaintiff was passed over for the October 2000 promotion did not necessarily render application for a second promotion a vain and useless act. In fact, the six interviewers gave plaintiff positive comments; with the exception of Mr. Velasquez, the only shortcoming noted was plaintiff's lack of education and training required for the position. Honeywell considered plaintiff for the October 2000 position, choosing her among several applicants to interview. On the other hand, it is apparent that plaintiff most likely would not have been promoted without obtaining an associate degree and/or more training or experience. Indeed, Honeywell has taken the position that plaintiff was not qualified for Electronic Technician because of her lack of degree. Thus, plaintiff can compare the circumstances of Mr. Mann's hiring under the futile gesture doctrine.

The Court concludes that, viewing this evidence in the light most favorable to plaintiff, there exists a genuine issue of fact as to whether Honeywell's proffered reasons for not promoting her were pretextual. To be sure, Honeywell has presented a strong showing of a non-discrimi-

26. *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir.2001) ("To establish a prima facie case for failure to promote, plaintiff must show, among other things, that *she applied for-or at least sought-* the position at issue.") (emphasis added).

27. *Id.* (citation omitted).

28. *Id.* at 1228–29.

29. *International Broth. of Teamsters v. United States*, 431 U.S. 324, 365–66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977).

30. *Id.* at 368, 97 S.Ct. 1843.

natory reason for not promoting plaintiff-that she was the least qualified of the four applicants. However, plaintiff has revealed weaknesses, inconsistencies and contradictions in Honeywell's proffered reasons for not promoting her. Of particular concern is Ms. Saxton's comments to plaintiff made contemporaneously with the hiring decision. Ms. Saxton's interview ratings were comparatively low to the other interviewers' ratings, and it is not clear from the record what influence she had on the group as plaintiff's Coach. Accordingly, Honeywell's motion for summary judgment is denied on plaintiff's failure to promote claim.

## B. Constructive Discharge

■■■■ To prevail on her constructive discharge claim under Title VII or the ADEA, plaintiff must establish that because of her gender or age, Honeywell subjected her to intolerable working conditions so that a reasonable person in the employee's position would feel compelled to resign[31] The standard is an objective one; an employee's subjective feelings or beliefs are irrelevant.[32] "If an employee resigns of her own free will, even as a result of her employer's actions, that employee will not be held to have been constructively discharged."[33] "Essentially, a plaintiff must show that she had 'no other choice' but to quit.'"[34] A finding of constructive discharge may be based in part by a discriminatory act such as a failure to

promote for discriminatory reasons.[35] However, a finding of constructive discharge may not be based solely on a discriminatory act; "'there must also be aggravating factors that make staying on the job intolerable.'"[36]

In support of her constructive discharge claim, plaintiff offers evidence of the October 2000 failure to promote, and subsequently being required to train Kueser to troubleshoot to the component level, when she was found to be unqualified at this skill. Plaintiff also cites her reassignment to the RF sub-assembly bench, where she contends the only work available was Electronic Technician work, and which she viewed as a demotion. Finally, plaintiff contends that she was subjected to discriminatory comments based on her age and gender.

As the Court previously held, plaintiff's claim for discriminatory failure to promote her to the October 2000 Electronic Technician position has survived the summary judgment stage. However, the record does not support her allegation that she trained Kueser to troubleshoot to the component level. Kueser, who was already an Electronic Technician before being hired for the October 2000 position, testified that plaintiff merely showed him repairs of some common problems that were visual. Plaintiff's duties as a Production Technician II included routine testing and assisting Electronic Technicians. The fact that

**31.** *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1229 (10th Cir.2001) (citing *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir.1994)).

**32.** *Heno v. Sprint/United Management Co.*, 208 F.3d 847, 858 (10th Cir.2000).

**33.** *Id.* (quoting *Jeffries v. State of Kan.*, 147 F.3d 1220, 1233 (10th Cir.1998)).

**34.** *Sanchez*, 164 F.3d at 534 (citing *Yearous v. Niobrara County Mem'l Hosp.*, 128 F.3d 1351,

1356 (10th Cir.1997)) (quoting *Woodward v. City of Worland*, 977 F.2d 1392, 1401 (10th Cir.1992)).

**35.** *Bennett v. Quark*, 258 F.3d at 1229 (citing *Premratananont v. S. Suburban Park & Recreation Dist.*, 1998 SL 211543, at *2 (10th Cir. Apr. 30, 1998)) (citing *Irving v. Dubuque Packing Co.*, 689 F.2d 170, 171–72 (10th Cir. 1982)).

**36.** *Id.* (quoting *James*, 21 F.3d at 992).

plaintiff may have subjectively viewed Kueser as less qualified than she does not constitute a sufficient aggravating factor.

Nor does the evidence demonstrate that plaintiff was demoted as a result of being passed over for promotion. A perceived demotion or reassignment to a job with lower status or lower pay may, depending on the individual facts of the case, constitute aggravating factors that would justify a finding of constructive discharge.[37] A reassignment is not a demotion unless the employee can show that she receives less pay, has less responsibility, or is required to utilize a lesser degree of skill than her previous assignment.[38] Plaintiff's evidence fails to show that she suffered any kind of demotion. On the contrary, plaintiff contends she was given *more* responsibilities as a result of being moved to the RF sub-assembly bench. Ms. Saxton testified that she reassigned plaintiff in order to give her more technical experience, although she instructed plaintiff not to perform any work other than Production Technician II duties. There is *no indication that this is* an "up or out" situation where failure to receive a promotion is a precursor for termination. A reasonable person in plaintiff's position would not have found conditions in her new assignment intolerable.

Further, plaintiff presents no evidence to establish discriminatory age or gender bias at Honeywell. Plaintiff cites Ms. Saxton's comments regarding young men with families and plaintiff having a husband to support her, made a few days prior to telling her that she did not receive the promotion. Plaintiff also alleges that Terry Jackson made a crude comment that she interpreted as pointing out the difference between men and women, and that Shawn Rundle commented that men made better "techs" than women. To the extent any of the statements were inappropriate, the Court concludes that they are insufficient to show the existence of a pervasive age or gender bias in Honeywell's workplace.

Rather than her resignation being compelled, the evidence indicates that plaintiff's resignation was entirely a product of her "own free will."[39] Plaintiff fails to point to any evidence that she complained to anyone in Human Resources at Honeywell about her treatment following her failure to get the October 2000 promotion, or otherwise attempted to alleviate her allegedly "intolerable" working conditions; rather, plaintiff's complaints to Ms. Saxton and co-workers related to not getting the promotion and her perceived pay disparity. On the contrary, plaintiff gave Honeywell two-weeks notice of her intent to quit, merely stating that she had other job opportunities. Plaintiff also told co-workers that she would have stayed at Honeywell for a small pay raise. These factors undermine her contention that she had "*no other choice* but to quit."[40]

The Court concludes that viewed in a light most favorable to plaintiff, the evidence falls short of establishing a claim for constructive discharge. Failure to complain aside, the conditions at Honeywell described by plaintiff were not such that a reasonable employee would have felt compelled to resign. The complaints plaintiff makes about her working conditions are her subjective feelings or beliefs, and are thus irrelevant. While the Court has no doubt that plaintiff was extremely disappointed when she was not promoted, it cannot conclude that objectively Honey-

---

**37.** *Bennett v. Quark,* 258 F.3d at 1229 (citing *James,* 21 F.3d at 993).

**38.** *Id.*

**39.** *Heno,* 208 F.3d at 858 (internal quotation marks omitted).

**40.** *Sanchez,* 164 F.3d at 534.

well's actions left plaintiff with no choice but to resign.

Accordingly, the Court concludes that plaintiff was not constructively discharged and Honeywell is entitled to summary judgment on this issue.

## C. Damages

 Under Title VII, an employee who quits is not entitled to back pay or front pay unless she was constructively discharged.[41] Honeywell argues that because plaintiff was not constructively discharged, her damages are limited accordingly. Because the Court has granted Honeywell summary judgment on plaintiff's constructive discharge claim, summary judgment is appropriate on this issue as well.

## D. Pay Disparity

### 1. Equal Pay Act

The Equal Pay Act ("EPA") provides that:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which

measures earnings by quantity or quality of the production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.[42]

 To establish a prima facie case under the EPA, plaintiff has the burden of proving that "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances."[43] "If a prima facie case is so established under the EPA the *defendant* must undertake the burden of *persuading* the jury that there existed reasons for the wage disparity which are described in the [EPA]."[44] If the defendant fails in this respect, the plaintiff will prevail on her prima facie case.[45] Thus, under the EPA, "the onus is on the employer to establish that the pay differential was premised on a factor other than sex."[46] Because the employer bears the burden of proof at trial, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense "so clearly that no rational jury could find to the contrary."[47]

*Equal work*

In an effort to establish a prima facie case for her EPA claim, plaintiff compares

---

**41.** *Mallinson–Montague v. Pocrnick,* 224 F.3d 1224, 1237 (10th Cir.2000).

**42.** 29 U.S.C. § 206(d)(1).

**43.** *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222,* 297 F.3d 1146, 1149 (10th Cir.2002) (citing *Sprague,* 129 F.3d at 1364 (quotation omitted)).

**44.** *Sprague,* 129 F.3d at 1364 (quoting *Tidwell,* 989 F.2d at 409 (emphasis in original)).

**45.** *Id.*

**46.** *Id.*

**47.** *Stanziale v. Jargowsky,* 200 F.3d 101, 108 (3rd Cir.2000).

herself to male Electronic Technicians who were paid more than plaintiff for doing work that, according to plaintiff, was substantially equal to plaintiff's work. Honeywell asserts that as a Production Technician II, plaintiff was not performing "equal work" to that of the Electronic Technicians.

The parties do not provide a job description for Production Technician II, but plaintiff testified that her duties included routine electronic testing on units or subassemblies. Ronalea Hayes testified that an Electronic Technician performed the same job duties as a Production Technician II, with the additional duty of troubleshooting to the component level. She also testified that an associate degree or military experience was required for the position.

■■■■ Substantial equality is to be evaluated in terms of skill, effort and responsibility.[48] Skill includes such considerations as experience, training, education and ability.[49] "The issue of whether two or more jobs require equal work in EPA terms is to be decided on a case-by-case basis."[50] "The relevant comparison is between the jobs and not the people holding them."[51] The equal work requirement of the EPA is not to be construed broadly.[52] "Like" or "comparable" work does not satisfy this standard, and "[i]t is not sufficient that some aspects of the two jobs were the same."[53]

■■■■ The Court concludes from the undisputed facts that the position of Production Technician II was not substantially equal to the position of Electronic Technician. Although some responsibilities overlap, the Electronic Technician position involved greater education, technical skill and training, specifically troubleshooting to the component level, than the Production Technician II position. Honeywell's differentiation between Production Technician II and Electronic Technician positions by level and range of pay weighs against a finding of equality.[54] However, viewing the facts in the light most favorable to plaintiff, it appears that she was troubleshooting to the component level. Accordingly, the Court will assume for purposes of summary judgment only that plaintiff was performing work substantially equal to the male Electronic Technicians.

*Factors other than sex*

■■■■ Assuming plaintiff has established a prima facie case, Honeywell maintains that summary judgment is appropriate because the wage disparity between plaintiff and the male Electronic Technicians is premised on factors other than sex.[55] Specifically, Honeywell contends that the salary differential was based on a Career Path process that defined pay bands for each hourly position, based on the year's matrix for that position. Honeywell contends that it differentiates salary classifications based on rank, which is determined by education, technical skill, training and experience, and that plaintiff had not met the requirements of the Electronic Technician position because she did not have sufficient technological education, skill, training or

---

48. *Brickey v. Employers Reassurance Corp.,* 293 F.Supp.2d 1227, 1230 (D.Kan.2003) (citation omitted).

49. *Id.*

50. *Id.*

51. *Id.*

52. *Id.* (citing *Nulf. v. International Paper Co.,* 656 F.2d 553, 560 (10th Cir.1981)).

53. *Id.*

54. *See Tomka v. Seiler Corporation,* 66 F.3d 1295, 1311 (2d Cir.1995).

55. *See Sprague,* 129 F.3d at 1364 (citation omitted).

experience. Plaintiff argues that the only difference between an Electronic Technician and a Production Technician II is the ability to troubleshoot to the component level, and that salary is determined by the duties an employee performs.

 There is evidence that plaintiff was troubleshooting to the component level, yet she was paid less than the male Electronic Technicians. What there is no evidence of, however, is the causal relation between sex and pay, which is an element of the EPA. Even if the man and woman are doing the same work for different pay, if the difference is due to a factor unrelated to gender, there is no violation. The Seventh Circuit gives the following example of this concept:

> Consider a female assistant professor and a male full professor in the same department, doing the same amount of teaching and publishing-and perhaps the assistant professor is doing more of both, and doing it better. Yet she will almost certainly be paid less, because of her lower rank. The difference in sex would not make the difference in pay violate the Equal Pay Act.[56]

This is an analogous case. Honeywell has produced evidence to show that the disparity in pay between plaintiff and the Electronic Technicians was based on rank, determined by education, technical skill and other factors not related to sex, while plaintiff has failed to come forward with any evidence to rebut this. It is undisputed that all Electronic Technicians hired during the relevant period had at least an associate degree or equivalent military experience. Plaintiff makes no effort to show that the salaries paid the Electronic Technicians do not correspond to the skills, responsibilities, and effort expected or to the experience and qualifications of the persons holding those positions. Her own opinion or that of a co-worker that she deserves a salary equal to Electronic Technicians is insufficient.

Although plaintiff may have been troubleshooting to the component level, the fact remains that she had not achieved the rank of an Electronic Technician. Plaintiff's contention that duties performed determined salaries is not supported by the record. Rather, the evidence shows that Honeywell's pay classifications are based on rank, which includes the measure of technological education. Honeywell has demonstrated that its pay classifications and salaries are in fact determined and applied pursuant to these gender neutral qualifications. Because Honeywell has met its burden to establish this fact, its motion for summary judgment as to plaintiff's EPA claim is granted.

### 2. Title VII/ADEA

 The EPA's requirement that a plaintiff prove equal work does not apply to claims under Title VII.[57] To establish a prima facie case of wage discrimination under Title VII, and therefore the ADEA,[58] plaintiff must show that she is a member of the protected class and occupied a job similar to that of higher paid employees.[59] Once plaintiff establishes a

---

**56.** *Lindale,* 145 F.3d at 957.

**57.** *Sprague,* 129 F.3d at 1362–63 (citing *Washington County v. Gunther,* 452 U.S. 161, 168–71, 180–81, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981)).

**58.** *Spulak v. K–Mart Corp.,* 894 F.2d 1150, 1153 (10th Cir.1990) ("The framework for assessing the evidence in an age discrimina-

tion case parallels that applicable in a Title VII case.")

**59.** *See Sprague,* 129 F.3d at 1362–63; *see also Holmes v. Regents of Univ. of Colorado,* 176 F.3d 488, 1999 WL 285826 (10th Cir.1999) (for an ADEA claim, plaintiff must show that he is " 'similarly situated' in terms of experience, credentials and accomplishments").

prima facie case, defendant must articulate a legitimate, non-discriminatory reason for the pay disparity.[60] This burden is exceedingly light; defendant need only proffer non-age or non-gender based reasons; defendant does not need to prove them.[61] Once defendant advances such a justification, plaintiff must show that defendant, regardless of the proffered reasons, intentionally discriminated against her.[62] In order to survive the summary judgment stage, a plaintiff must submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. In other words, plaintiff must show that a discriminatory reason more likely than not motivated Honeywell to pay females/older workers less than males/younger workers.

 The Court finds that plaintiff has established a prima facie case. Viewing the facts in the light most favorable to plaintiff, it appears that she was troubleshooting to the component level, which is similar to the work performed by the male Electronic Technicians. Likewise, the Court finds that Honeywell has met its burden of production under the second step of the McDonnell Douglas framework, proffering several legitimate, non-discriminatory reasons for the salary disparity between plaintiff and the male technicians, including the Electronic Technician's educational qualifications, which plaintiff lacked. The burden thus falls on plaintiff to demonstrate a triable issue of fact through evidence that could cause a reasonable factfinder to disbelieve the proffered legitimate reasons or to believe that age and/or sex discrimination was

more likely than not a motivating factor in the salary decision.

As evidence of pretext, plaintiff notes that Honeywell knew plaintiff was performing Electronic Technician job duties, citing the testimony of co-worker Robert Trull, who testified that he told Ms. Saxton in 2000 that plaintiff needed to be paid as an Electronic Technician because she "had figured out herself" how to troubleshoot to the component level. The Court notes that Trull testified that Saxton's response was, "We know, we're trying to do something about it," apparently a reference to the possible promotion in October 2000. Plaintiff further contends that Ms. Saxton intentionally discriminated against plaintiff because of her age and sex by not objectively evaluating her technical skills, calling her unqualified and ranking her as unqualified without an objective reason to do so, in connection with her unsuccessful application for promotion to Electronic Technician in October 2000.

Plaintiff's evidence is insufficient to allow a reasonable jury to conclude that defendant's nondiscriminatory reason is a pretext and that plaintiff's age or gender made the difference in Honeywell's decision to pay plaintiff less than younger male Electronic Technicians. Much of the Court's analysis regarding plaintiff's EPA claim applies here as well. As noted, plaintiff had not achieved the rank of Electronic Technician. She knew that troubleshooting to the component level was outside her duties as a Production Technician II. Plaintiff has not demonstrated that she would have received different salary had she been a younger male-it remains uncontroverted that all Electronic Technicians hired in the relevant time period, including Corey Mann, had an associate degree or

---

**60.** Sprague, 129 F.3d at 1363 (citations and quotations omitted).

**61.** Id.

**62.** Id.

equivalent military experience. There is no evidence of younger male Electronic Technicians *without* a degree or military experience being paid more than plaintiff. Plaintiff has failed to demonstrate the causal connection between her age or gender and her salary rate.

Moreover, the fact that plaintiff may have the practical ability to troubleshoot to the component level does not suggest that an associate degree or equivalent military experience is beyond the educational qualifications required for the position of Electronic Technician, or that Honeywell would be precluded from considering educational qualifications in determining employees' salaries. The Court concludes that plaintiff has not presented sufficient evidence such that a factfinder could reasonably conclude that the male Electronic Technicians' qualifications, specifically their associate degrees, are so unrelated to their employment as to be a pretext for intentional discrimination.

The evidence shows a legitimate basis for the difference in pay, and none of the evidence presented by plaintiff reveals a desire on the part of Honeywell to intentionally pay her less because of her age or gender. Plaintiff has failed to demonstrate that Honeywell's pay classifications were a pretext against females and/or older workers. Under both the ADEA and Title VII, plaintiff bears this ultimate burden of proving intentional discrimination. Accordingly, summary judgment is granted on plaintiff's ADEA and Title VII claims.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 96) is GRANTED with respect to plaintiff's claims for constructive discharge, mitigation of damages and pay disparity.

**IT IS FURTHER ORDERED** that defendant's Motion for Summary Judgment is DENIED with respect to plaintiff's claim of discriminatory failure to promote.

**IT IS SO ORDERED.**